Hillsborough,
No. 4813.

RUSSELL R. CARTER, *Adm'r v.* NOVAT B. BERGERON.

PEERLESS INSURANCE CO. *v.* SAME *& a.*

Argued April 5, 1960.

Decided April 29, 1960.

466

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Brown* orally), for the administrator.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Dort S. Bigg* (*Mr. Bigg* orally), for Bergeron and Peerless Insurance Company.

*Devine, Millimet & McDonough* for Bergeron and Manninen, furnished no brief.

DUNCAN, J.   As insurer of the GMC pickup truck which was some distance beyond the scene when the collision occurred, Peerless Insurance Company advances two principal contentions: first, that the Trial Court erred in submitting the case to the jury under the second count of the writ, and in particular in submitting the special question based on that count; and second, that its policy furnishes no coverage to Bergeron even if it could properly be found that his negligence in controlling the operation and speed of the truck operated by his employee caused or contributed to cause the accident.

I.   In support of the first of these contentions, it is argued that there was no evidence to warrant a finding that Bergeron attempted to or in fact did control the speed of the truck operated by Manninen, or that the speed of this truck was excessive or contributed to cause the accident.   It is also argued that as a matter of law the negligence of Manninen was in any event a superseding cause of the collision; and further that the decedent was contributorily negligent as a matter of law, and the administrator's action is therefore barred.

The defendant Bergeron testified that the horses were loaded upon the truck operated by Manninen in Danbury, and that he followed in the pickup truck as far as Potter Place, where he "took the lead," having satisfied himself that the horses were riding well. Manninen had been in his employ only four days, and this was the first time that he had transported livestock for Bergeron.   Bergeron testified that on two different occasions before reaching Boscawen, he stopped and signaled Manninen to pass.   He testified that from

Penacook to Concord he followed the other truck, and that at the south end of Main Street in Concord he passed it and proceeded on his way to Wilton, without again seeing it.

It could be found from the testimony of Manninen however, that Bergeron did not leave him until Manninen reached the intersection of Routes 3 and 28 in Hooksett. He testified that as he slackened his speed for the intersection, Bergeron "was just going around the corner" some two thousand feet ahead. It could be found from Manninen's testimony, both on deposition and at the trial, that the two vehicles had traveled at an average speed of thirty-five to forty miles an hour along the route, with Bergeron "trying to get [him] to go a little bit faster . . . [by] motioning [him] to come on." On deposition he testified that this procedure continued "practically all the way coming down." At the trial however he testified that "from Concord down he [Bergeron] left me alone." He then conceded however, that Bergeron did not leave him until he reached the intersection in Hooksett, and that it was his recollection when his deposition was taken that "Bergeron had been shepherding [him] along all the way down and was just going around the corner at about the time the accident took place."

The collision occurred, according to Manninen's testimony, after he first saw the Carter truck crossing the highway, thirty to thirty-six feet ahead, at which time he turned toward his left to go ahead of it. He testified that he applied his brakes, but not "to the full extent that [he] probably should have," and collided with the forward part of the Carter truck in the center lane of the three-lane highway, from where his truck continued to the lefthand shoulder of the highway. The horses were thrown from the truck, the Carter truck was spun about toward the south and, Carter was precipitated onto the highway.

There was evidence that at a speed of forty miles an hour, which could be found to have been Manninen's speed, Manninen could have avoided the accident had he applied the brakes one hundred feet from the point of impact, and that he probably could have avoided it even if he did not see the truck until he was within forty feet of it.

From this and other evidence, the jury was warranted in finding that Bergeron's conduct in acting as pilot for Manninen so far influenced Manninen in the operation of the truck as to cause him to travel at a speed which was unreasonable under the circumstances and thereby caused or contributed to cause the accident.

It could likewise reasonably find that Bergeron's conduct was an inducing cause of Manninen's negligence, both as to speed and failure to keep a lookout for vehicles entering the highway. See *Thelen* v. *Spilman*, 251 Minn. 89; anno. 48 A. L. R. (2d) 252. Hence, a finding that Manninen's negligence was a superseding cause of the accident was not required as a matter of law.

The insurer argues that the jury's disbelief of Manninen's testimony that Bergeron "left him alone" after they reached Concord does not warrant a finding that Bergeron exercised any control over Manninen's speed beyond that point. *Bissonnette* v. *Cormier*, 100 N. H. 197, 199. Manninen himself however contradicted the testimony which he gave in this respect. He acknowledged that Bergeron "was still trying to make [him] speed up but [he was] unwilling to drive at that speed through the intersection," and later agreed that "we did establish . . . it was your recollection at the time of the deposition that Mr. Bergeron had been shepherding you all the way down and was just going around the corner [when] the accident took place." If there was no affirmative evidence that Bergeron actively urged Manninen forward after they both had passed the intersection still the jury could find upon Manninen's testimony that he increased his speed as he came out of the intersection, and that when the collision occurred his speed was higher than it should have been. It could also properly infer that this was due to Bergeron's prior conduct, as a continuing factor in prompting Manninen's haste.

In short, we are of the opinion that there was no error in submission to the jury of the issue presented by the second count of the writ, and that the jury's answer to the question based thereon finds support in the record.

The evidence regarding the care exercised by the decedent does not require a different conclusion. If the jury found under instructions given that Manninen had the last clear chance to avoid the accident (*Clark* v. *Railroad*, 87 N. H. 36), then contributory negligence on the part of Carter was no bar to the action. *Stocker* v. *Railroad*, 83 N. H. 401, 403. See *Tyrrell* v. *Railroad*, 77 N. H. 320. Further, the burden of establishing contributory negligence was upon the defendant. No witness at the trial could describe the decedent's conduct in any detail, but evidence was received of his custom of stopping some seventeen to twenty feet from the highway, and looking both ways before proceeding. There was no evidence as to whether or not he had stopped a second time at the

edge of the traveled way, where his view of southbound vehicles may have been partially obscured by a sign in front of the motor court. It is settled law that if a decedent's conduct "admits of any reasonable and nonculpable explanation, the question of his due care is for the jury." *Jones* v. *Railroad*, 83 N. H. 73, 78.

If the jury found that Manninen slackened his speed as he came into view and thereafter speeded up, it could find that the decedent committed an excusable error of judgment in concluding that he could cross in safety ahead of the southbound truck. *MacKelvie* v. *Rice*, 92 N. H. 465. We conclude that the issue of contributory negligence, and its effect upon the plaintiff's right to recover was properly left for determination by the jury. *Lamontagne* v. *Railway*, 97 N. H. 6, 10.

II. The second issue, of whether the liability policy insuring the GMC pickup truck operated by Bergeron requires the insurer to satisfy any judgment against him within the limits of the policy, turns upon the provisions of the policy itself. The insurer undertook to insure the owner of the GMC pickup truck against liability for damages because of personal injury or death caused by accident "and arising out of the ownership, maintenance or use of" the vehicle.

It is argued that the insured vehicle did not itself.produce the injury; that the accident was not "within [its] natural territorial limits"; and that it did not arise out of the vehicle's inherent nature "as such." See, 7 Appleman, Insurance Law and Practice 86, s. 4317. It is urged that some "physical" relation between the truck and the accident is a requisite, and that the administrator's contention that his intestate's injuries arose out of "use" of the pickup truck, within the meaning of the policy, is not only ingenious but fantastic.

The circumstance that the insured vehicle was not in collision with the decedent's truck, and that it was at most merely a "platform" from which the insured is claimed to have signaled to the operator of the truck which immediately caused the injuries, does not conclusively establish that the injuries did not "arise out of the . . . use" of the insured vehicle. In *Eastern Transp. Co.* v. *Liberty Mut. Cas. Co.*, 101 N. H. 407, the accident was held to have arisen out of use of the insured truck, although it was not being operated when the collision occurred, and there was no physical contact between it and the plaintiff's automobile.

"The words 'arising out of . . . use' are very broad, general and

comprehensive terms . . . ordinarily understood to mean 'originating from' or . . . 'growing out of' or 'flowing from.' " *Schmidt* v. *Utilities Ins. Co.*, 353 Mo. 213, 218-219. 7 Appleman, *supra, s.* 4317 (supp.). As was held in *Eastern Transp. Co.* v. *Liberty Mut. Cas. Co., supra,* 411, the language of the policy "does not require a finding that the injury . . . was directly and proximately caused by the use of the [insured] vehicle," but only that it arose out of the use.

The evidence in the case now before us warranted a finding that the insured vehicle was being used by the employer to regulate or pace the speed of the following truck operated by the employee. It could be found that this use accounted both for the speed at which the truck operated by the employee was proceeding when the accident occurred and for its presence there at that particular time. If, as could be found, that speed was unreasonable and imprudent, and the operator's lookout inadequate as a result of the control exercised by the employer, the conclusion that the injury originated from or arose out of the use of the insured truck logically follows.

The fact that the insured vehicle was exerting no physical force upon the instrumentality which was the immediate cause of the injury, and was not itself in physical contact with the decedent or his truck is neither decisive of nor fatal to the plaintiff's claim of coverage. See *Caron* v. *American Motorists Ins. Co.*, 277 Mass. 156; *Gen'l Acc. &c. Corp.* v. *Hanley Oil Co.*, 321 Mass. 72; *Fidelity and Casualty Company* v. *Lott*, 273 F. 2d 500 (5th Cir. 1960). *Cf. Wiebel* v. *Am. Farmers Mut. Ins. Co.*, (Del. Super.) 140 A. (2d) 712. The injury need not be produced by the force of the insured vehicle itself in order to arise out of its use. *Red Ball Motor Freight* v. *Employers Mut. Liability Ins. Co.*, 189 F. 2d 374 (5th Cir. 1951); *Hall* v. *United States F. & G. Co.*, (Ohio App.) 155 N. E. (2d) 462; *Halferty* v. *Nat'l Mut. Cas. Co.*, (Kans. City App.) 296 S. W. (2d) 130. It is sufficient that the use was "connected with the accident, or the creation of a condition that caused the accident . . . . " *Wiebel* v. *Am. Farmers Mut. Ins. Co., supra,* 714. The policy issued by Peerless Insurance Company afforded coverage against liability under the second count of the administrator's writ.

We see no error in submitting the issue stated in the second question to the jury drawn to try the law action, rather than to one which might previously have been impanelled in the action for declaratory judgment. The existence of insurance was not disclosed

at the trial but would have been apparent had the procedure now suggested been followed; and the parties would have had the expense of two jury trials. The procedure adopted was well within the discretion of the court below.

*Exceptions overruled.*

All concurred except KENISON, C. J., who dissented as to part II of the opinion.