**FEDERATED MUTUAL IMPLEMENT AND HARDWARE INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**George E. GUPTON, Jr., and Minnie Lou Williams, Defendants.**

**Civ. A. No. 8501.**

United States District Court
E. D. South Carolina,
Charleston Division.

Heard April 12, 1965.

Decided May 20, 1965.

Sinkler, Gibbs & Simons, Charleston, S. C., for plaintiff.

Morris D. Rosen, Julian H. Toporek, Charleston, S. C., for defendant George E. Gupton, Jr.

Irving Levkoff, Charleston, S. C., for defendant Minnie Lou Williams.

HEMPHILL, Chief Judge.

Motion by plaintiff insurance company under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, alleging that it is under no obligation or duty to appear and defend in the action by defendant Gupton against defendant Williams because of plaintiff's policy of liability insurance issued to Gupton's employer, Riggs Esso Service Station, or by reason of the South Carolina Uninsured Motorist Act.

There are no South Carolina cases close to being in point on the issue presented here, so this Court must pick its way along the *Erie* track unguided by that infallible beacon, hindsight.

The stipulated facts show that on May 10, 1962, defendant Minnie Lou Williams, operating her 1957 Ford automobile in the West Ashley area of Charleston County, ran out of gas and stopped on the shoulder of the roadway and thereafter made her way to Riggs Esso Service Station where she made arrangements to buy gasoline to put in her stalled automobile. She was brought back to her car in a Riggs pick-up truck operated by defendant George E. Gupton, Jr., an employee of Riggs who neither lived with nor was related to Riggs. Gupton parked the Riggs truck on the shoulder of the road approximately six feet behind Minnie Lou Williams' car headed in the same direction; he alighted from the truck, taking the gasoline can with him, and commenced pouring the fuel into the tank of the Williams car. Defendant Wil-

liams got into her car and started it while Gupton was still pouring gasoline into her tank, then her car suddenly, and apparently unexpectedly, backed up over the six foot distance between the back of her car and the front of the pick-up truck and pinned Gupton between the two vehicles, injuring him severely.

At the time of this accident, for the purposes of this litigation, Minnie Lou Williams' car was an uninsured motor vehicle within the South Carolina uninsured motorist statute, because her liability carrier subsequently became insolvent, and the question therefore, with this set of facts, is whether or not Gupton is an "insured" under Riggs' statutorily required uninsured motorist coverage.

In the light of the definition of "insured" under the statute it is necessary to determine whether at the time of this accident Riggs' employee Gupton was "using" the pick-up truck involved in this accident.

The uninsured motorist endorsement in the policy is not consonant with the South Carolina Uninsured Motorist Act, and the parties have agreed that the Act is controlling.

Relevant portions of the applicable South Carolina statutory law are as follows:

"S.C.Code, 1962, § 46–750.31, Definitions:

\* \* \* \* \* \*

"(2) The term '*insured*' means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, express or implied, of the named insured, the motor vehicle to which the policy applies. \* \* \*

\* \* \* \* \* \*

"S.C.Code, 1962, § 46–750.32, Bodily injury and property damage limits required.—No policy or contract of bodily injury liability insurance or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, shall be issued or delivered in this State to the owner of such vehicle, or shall be issued or delivered by an insurer licensed in this State upon any motor vehicle then principally garaged or principally used in this State, unless it contains a provision insuring the persons defined as insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicles within the United States of America \* \* \*."

As defendant Gupton points out, § 46–750.32 does not require that the insured vehicle be operated negligently nor does it require that the insured vehicle be operated at all. The Act only requires that the injuries arise "from the ownership, maintenance, or use" of the motor vehicle. For example, accidental injury may be within the ambit of an automobile liability policy, even though it did not result from the movement of the insured motor vehicle. Earl W. Baker & Co. v. Lagaly, 144 F.2d 344, 346, 154 A.L.R. 1098 (10th Cir. 1944). There the Court observed that opening the bus' door and permitting the child to depart was inextricably tied-up with the operation of the bus. See 7 Am.Jur.2d Automobile Insurance § 85 for other illustrations.

Exact definition of the term "use" is elusive, and is not capable of a definition which will leave everyone "comfortable." Whether or not an injury arose from the "use" of a motor vehicle within the contemplation of a liability policy or statute depends upon the factual context of each case. In this setting the term does not imply "remoteness," but does extend beyond actual physical contact. And it would seem to extend at least to the point, beyond physical contact, where control over the instrumentality is easily or reasonably at hand, and particularly when it is still being "utilized."

In Carter v. Bergeron, 102 N.H. 464, 160 A.2d 348, 89 A.L.R.2d 142, it was argued that "the insured vehicle did not itself produce the injury; that the accident was not 'within [its] natural territorial limits'; and that it did not arise out of the vehicle's inherent nature 'as such.' * * * [U]rged (was) that some 'physical' relation between the truck and the accident is a requisite, and that the administrator's contention that his intestate's injuries arose out of 'use' of the pickup truck, within the meaning of the policy, is not only ingenious but fantastic." The Court answered this by saying that there was no requirement " 'that the injury (be) * * * directly and proximately caused by the use of the [insured] vehicle,' but only that it arose out of the use." 160 A.2d at 353, 89 A.L.R.2d at 149.

As the Court noted in Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W. 2d 181, 154 A.L.R. 1088, 1092:

"We must consider whether the negligent act and resulting injury was a natural and reasonable incident or consequence of the use of the trucks for the purposes shown by the declarations, though not foreseen or expected; and whether, after the negligent acts and injury were complete, it was possible to trace the negligent acts and resulting injury as reasonably incident to, and closely connected with, the use of the trucks for the purposes shown in the declarations in the policy."

The declarations found in the policy are also applicable insofar as they do not attempt to reduce the statutory coverage. Was the injury to Gupton a reasonable consequence of the use of the truck for the purposes shown in the policy declarations? Schmidt v. Utilities Ins. Co., supra.

An important policy provision provides:

"Definition of Hazards

"Division 1—Premises—Operations —Automobiles: The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes * * *."

It is all too obvious that it was within the contemplation of the parties that the truck would be used as a service station truck and that the operation of delivering gasoline on the highways was a necessary and incidental adjunct.—At the time the accident occurred the truck was parked and being used in a manner which exposed the liability carrier to a "hazard" as defined above. This is the type situation intended to be covered by the Uninsured Motorist Act. The hazards an employee exposes himself to in venturing upon the highway when using the truck for purposes of the delivery of gasoline is a situation which the Act was designed to cover. This does not make the Act a substitute for workmen's compensation.

The collation of cases and discussion in 89 A.L.R.2d 150 treats this subject well, and is a helpful research tool.

Hall v. United States Fidelity & Guaranty Co., 107 Ohio App. 13, 155 N.E.2d 462 is somewhat similar to the case at bar. There preparations were being made to attach a tow rope from an automobile to a stalled jeep, and plaintiff, who was standing between the two vehicles, was injured when the automobile backed up, squeezing him between the two vehicles. The Court there held that the jeep's insurer was liable in that the injury arose from the ownership, maintenance or use of the jeep, stating that the relationship of the jeep to plaintiff's injury was neither remote nor incidental, and that without the use and ownership of the vehicle plaintiff would not have been squeezed. The fact that the jeep was not in motion and not being operated by the insured was of no consequence, said the Court, as there was a clear proxi-

mate connection between the ownership and use of the jeep and plaintiff's injury.

In Panhandle Steel Products Co. v. Fidelity Union Casualty Co., Tex.Civ. App., 23 S.W.2d 799, it was held that a woman's injuries were covered by the "use" clause of a truck liability policy when she was injured by a piece of iron being delivered by one of the insured's employees. It had been unloaded from the truck and was being moved across the sidewalk. The Court stated that the delivery to the purchaser was the main purpose of the haul and the loading and unloading was as necessary to accomplish the purpose as was the driving of the truck from its headquarters to the point of delivery. Not only was the unloading of the material necessary to consummate the sale but it was also necessary for the further use of the truck. The Court went on to say:

> "[T]he language used in the liability clause of the policy [1] is broad and general in its scope, and not restricted by any words to the effect that the injuries covered by that clause must be the 'proximate' result of the use of the truck, or that the injury must be sustained while the truck was being driven, or the result of collision or overturning, etc."

In Owens v. Ocean Accident and Guaranty Corp., 194 Ark. 817, 109 S.W.2d 928, it was held that where an ambulance was sent for the plaintiff and while she was being carried from her home to the ambulance on a stretcher and was allowed to fall, that her injuries resulted from the "use" of the ambulance The Court there noted that the use of the stretcher was an essential transaction in connection with the "use" of the automobile as an ambulance (as was the use of the gas can, which had not been completed at the time of the accident, an essential transaction of the pick-up truck as a gas

station highway truck). In a similar situation, other courts have held contra.[2] See J. T. Henton and Son v. Employers' Liab. Assurance Corp., 166 Tenn. 324, 62 S.W.2d 47. See 89 A.L.R.2d at 164.

Where a gasoline truck had been serviced at a station and an explosion occurred later because a valve was closed improperly while it was being serviced, it was held that the negligence was an act incident to, and having connection with, the ownership, maintenance, or use of the truck within the provisions of the insurance policy. Chief Judge Hutcheson, applying Texas law, held that:

> "the provision for use coverage extends to foreseeable consequences of what was done in connection with the use of the car, whether before, after, or during loading or unloading, so long as the act or thing done by the insured's employee which causes the accident arises out of the use of the insured's car."

Red Ball Motor Freight v. Employers Mut. Liab. Ins. Co., 189 F.2d 374, 377 (5th Cir. 1951). The Court, approving Schmidt v. Utilities Ins. Co., supra stated

> "that the words 'arising out of the ownership, maintenance, or use of the [truck]' are not words of narrow and specific limitation, but are broad, general, and comprehensive terms effecting broad coverage and that they are intended to, and do afford protection to the insured against liability imposed upon him for all damages caused by acts, of his employee in charge of the operation or use of the truck, done in connection with or arising out of such use. 'Arising out of' are words of much broader significance than 'caused by'. They are ordinarily understood to mean ' "originating from" "having its origin in," "grow-

---

1. In the case at bar, the policy and statutes are applicable.

2. "While the cases do not form a string of pearls," Waldron v. British Petroleum Co., 231 F.Supp. 72, 84 (E.D.N.Y. 1964), it must be recognized that "[r]e-

sults which are consonant with justice are not always to be reached by a mere counting of noses, judicial or otherwise * * *." Deveny v. Rheem Manufacturing Co., 319 F.2d 124, 130 (2nd Cir. 1963).

ing out of" or "flowing from" ', or in short, 'incident to or having connection with', the use of the car."
189 F.2d at 378.

It was held in American Fire & Casualty Co. v. Allstate Ins. Co., 214 F.2d 523 (4th Cir. 1954), that where a vehicle collided with a Chrysler automobile with a jeep in tow that the policy covering the jeep was applicable and its insurer would be required to share liability exposure with the insurer of the towing vehicle. The jeep was not under its own power and carried no passengers. Judge Soper rejecting appellant's contention that the injury did not arise "out of the ownership, maintenance or use" of the jeep within the meaning of the policy, stated:

> "It cannot be said that the employment of the vehicle in such a manner was so unusual as not to have been within the contemplation of the parties to the insurance contract, and it would violate the usual rule of liberal interpretation of such an agreement in favor of the insured, if it should be held that a car being transported under the circumstances was not actually in use."

214 F.2d at 525. It would seem that like reasoning would apply to the case at bar. The parties clearly contemplated "use" by the truck on the highways to assist motorists. Did not the accident "arise" out of such "use"?

As was noted before, the Supreme Court of South Carolina has never decided the issue presented here. Nevertheless, a 1961 decision by Chief Justice Taylor did consider the term "use" as it applied to an automobile. Coletrain v. Coletrain, 238 S.C. 555, 121 S.E.2d 89, involved an action by a wife against her husband and against insurer whose liability policy covered a taxicab, for injuries sustained when the husband closed the taxicab door on her hand while they were alighting. The insurer demurred on the basis that the "use" contemplated by the policy was that of driving or operating the cab.

The Court noted that the word "use" is defined by Webster as " '[t]o put into operation, to cause to function; * * * to act with regard to; * * * act of employing anything, * * *.' " 121 S.E.2d at 90.

Discussed in Coletrain was Fidelity and Casualty Co. of N. Y. v. Lott, 273 F.2d 500 (5th Cir. 1960), which held that an injury and death caused by the negligent discharge of a rifle where the automobile was being used as a gun rest was a "use" of the automobile within the phrase "caused by accident and arising out of the ownership, maintenance or use of the automobile." With respect to the contention that the "use" must be in "driving or operating" Judge Tuttle indicated that this was not necessary as the death arose out of the "use" of the automobile. Further quoted with apparent approval in Coletrain was this statement, to be found in 273 F.2d at 502:

> " * * * It is unquestionably true that in the ordinary sense of the words Miller's death was 'caused by accident * * * arising out of the use of the automobile.' "

121 S.E.2d at page 90.

Approved also in Coletrain was text authority and decisions from other jurisdictions which concluded that the "use" contemplated is not limited to physical operation or driving, and that the term includes loading and unloading. Further, the policy must be considered with regard to the setting in which it is employed. Note the discussion of Coletrain in 15 S.C.L.Rev. 117 (1962).

Referring again to the stipulated facts, it is apparent that Gupton was "using" the truck to deliver gasoline, to unload gasoline, to carry whatever tools which might be necessary to effectuate a repair or adjustment (even though they were in fact not needed), and to return the empty gas can to the pick-up truck for delivery back to the station. The pick-up truck was driven immediately to the rear of the stalled auto to be serviced, as is customary. Certainly the hazard insured against was injury to Gupton or anyone else using the truck under such circumstances. The injuries

sustained by Gupton arose out of the "ownership, maintenance or use" of the pick-up truck in question and defendant Gupton is entitled to the benefits of the Uninsured Motorist Act of South Carolina.

Plaintiff's motion for Declaratory Judgment in his favor is denied and the Clerk will enter Judgment for defendant Gupton in accordance with this Order. Costs will follow judgment.

And it is so ordered.