**WYOMING FARM BUREAU MUTUAL INSURANCE COMPANY, INC., a Wyoming corporation, Plaintiff-Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.**

No. 72-1124.

United States Court of Appeals, Tenth Circuit.

Oct. 2, 1972.

A. Joseph Williams of Guy, Williams, White & Mulvaney, Cheyenne, Wyo., for defendant-appellant.

Paul B. Godfrey, Cheyenne, Wyo., for plaintiff-appellee.

Before BREITENSTEIN, SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

State Farm Mutual Automobile Insurance Company, defendant-appellant, seeks reversal of a judgment in favor of Wyoming Farm Bureau Mutual Insurance Company, Inc., plaintiff-appellee. The judgment was in the amount of $10,000.00, which sum represented the limit in an automobile policy issued by State Farm to one David Sinner.

Wyoming Farm Bureau had issued its homeowners policy to one Edward L. Lorenzen, whose son Edward L. Lorenzen III was, on December 2, 1969, the day of the accident giving rise to the lawsuit, a passenger in the vehicle which was being driven by Sinner. Lorenzen threw a bottle out of the window of Sinner's car. It struck a curb and splintered, injuring the eye of a bystander, Harvey. Wyoming Farm Bureau, on behalf of its insured, Lorenzen, settled Harvey's claims for $21,677.87. Thus, the present action is an effort to obtain partial reimbursement.

The homeowners policy of Wyoming Farm Bureau excluded bodily injury arising out of the ownership, maintenance, operation, use, loading or unloading of any motor vehicle owned or operated by an insured. The State Farm policy of Sinner undertook

"[t]o pay on behalf of the insured all sums which the insured shall be obligated to pay as damages because of . . .

(A) Bodily injury sustained by other persons and

(B) Property damage.

Caused by accident *arising out of the ownership, maintenance or use, including loading or unloading of the owned motor vehicle . . . .*" (Emphasis added.)

The trial court submitted the issue of State Farm's liability to the jury and a verdict was returned in favor of Wyoming Farm Bureau. The trial court gave an extensive charge in which it was explained that State Farm could be held liable only if its insured, Sinner, was subject to liability as a knowing participant in the throwing of the bottle from the vehicle and only if the act of throwing was found to be a negligent act, and, further, only if the quoted clause was found to cover this incident. We must decide whether as a matter of law the events producing the injury were included or excluded from the policy coverage, and thus it is necessary to examine the facts, at least briefly. These have to be gleaned from the deposition testimony of David Sinner and Lorenzen. Their testimony is in substantial agreement; there are some minor differences.

The incident occurred at Riverton, Wyoming, in December 1969. Sinner, Lorenzen and three other 16-year-old classmates were riding around after school in Sinner's automobile. The incident occurred between 2:30 and 3:00 in the afternoon. They had a bottle with some quantity of vodka, and on the way home Sinner, Lorenzen and the three others, Lacy, Jameson and Peckenpaugh, were drinking it. After the bottle was emptied, Sinner told them to throw the bottle and other trash out of the car. This was in anticipation of the car being taken to Sinner's home. Sinner was driving the car and Lorenzen was in the rear seat on the right side. Sinner testified that he did not know that the bottle was being thrown out. Lorenzen testified that someone said "throw the vodka bottle out", that Sinner tried to get it but could not reach it, and so he picked it up and threw it out. He threw it toward a parking lot, but at the exact moment of the toss of the bottle, Sinner swerved the vehicle in order to miss a cat or something, and because of this, according to Lorenzen, he missed the parking lot and hit the curb, and this is what caused the bottle to shatter. Neither of them realized that Scott Harvey, who had been an outstanding athlete, had been injured. They learned of this later on that day. The crucial contention of State Farm is that the facts do not justify invoking the extend-

ed coverage provision of the policy, which provision is quoted above.

In the course of its charge the trial court read to the jury the entire clause including the words "loading" and "unloading", and much of the argument here on both sides is concerned with whether the throwing of the bottle is an act which can be considered in law as unloading. However, the trial court's charge in defining the issues to the jury focused on that part of the extended liability provision involving use, operation or maintenance of the vehicle.[1]

■ Based upon the repeated emphasis which the court gave to the use, operation or maintenance clause, it is not possible to conclude that the jury award was attributable to the loading and unloading extension of the use clause, and so appellant's contention that the question of unloading was considered must be rejected. In our view, it cannot be said that the throwing of the bottle and the resultant injury were incident to unloading. To hold that this term is to be given a meaning which embraces the throwing of a foreign object from the vehicle is out of harmony not only with the decided cases, but also with reason. On the other hand, we conclude that the incident here in question is properly to be regarded as an accident resulting from the use, operation or maintenance of the vehicle within the meaning of the extended liability provision, and we affirm on this basis.

■ Since this is a diversity action it is governed by state law. And since the insurance contract was made in Wyoming and was to be performed there, the law of that state is applicable.

We have researched the Wyoming cases and find no decision construing the clause in question. However, the indications are that generally recognized rules of construction are observed by the Wyoming Supreme Court. Thus, in Wilson v. Hawkeye Cas. Co., 67 Wyo. 141, 215 P.2d 867 (1950), the Wyoming Supreme Court considered rules of construction in a theft insurance policy and held that the language of a policy is not tested by the insurer's intention as to the meaning of the words; rather, the question is what a reasonable person in the position of the insured would have understood them to mean; that where the contract is ambiguous and uncertain, it is to be construed liberally in favor of insured and strictly against the insurer; and further that where the contract is susceptible to two constructions, that which was favorable to the insured is to be adopted. See also McKay v. Equitable Life Assurance Society of United States, 421 P.2d 166 (Wyo.1966).[2]

1. On this point the trial court charged:

In order for the plaintiff to recover from the defendant, State Farm Mutual Automobile Insurance Company, the jury must find that the accident resulted from the use, operation or maintenance of the vehicle and that the accident was the direct result of the use, maintenance and operation of the vehicle.

The court further limited itself to the maintenance, operation and use clause when it said:

* * * The plaintiff in this case contends not only that there is coverage under the "maintenance, operation and use" clause in the automobile policy, but also that Edward Lorensen was acting as an agent of David Sinner and that there is therefore coverage under the State Farm Fire & Casualty policy issued to his family.

Later on in its charge it repeated once again that it was this part of the clause which was applicable when it said:

Turning now to the liability in this case, if any, of the State Farm Mutual Automobile Insurance Company, such liability must be based on the terms of its insurance policy and the facts as you determine them to be. In so far as terms of the policy are concerned, there can be no liability on the part of that company unless the accident arose out of the ownership, maintenance or use of the Sinner car.

2. In McKay, the Wyoming court said:

It is true that in the Wilson case we took cognizance of the foregoing general principles of construction often stated and applied in controversies involving policies of insurance. However, we also took cognizance of other

Also, in the absence of definitive state law, a construction and ruling by a federal district judge sitting within the district as to the law of that state is entitled to great weight. *See* Caribou Four Corners, Inc. v. Truck Ins. Exchange, 443 F.2d 796, 801 (10th Cir. 1971). Indeed, we have held that a resident federal district judge's interpretation of state law is to be accepted unless it appears that this interpretation is clearly erroneous. National Union Ins. Companies v. Inland Crude, Inc., 433 F.2d 584 (10th Cir. 1970); Parsons v. Amerada Hess Corp., 422 F.2d 610 (10th Cir. 1970); Bartch v. United States, 330 F.2d 466 (10th Cir. 1964).

The denial by the trial court of the defendant-appellant's motion for directed verdict and the court's submission of the case to the jury constitutes the ruling which is submitted for review, and since we have ruled that the throwing incident was not a species of unloading, the sole issue is whether as a matter of law the injury was an accident arising out of the ownership, maintenance or use of the motor vehicle within the meaning of the State Farm policy.

The numerous cases which have construed the clause that we have before us hold in effect, if not directly, that the relationship between the use of the vehicle and the injury complained of need not be a direct one. Injuries indirectly related to the use of the vehicle are held to be covered. The courts do scrutinize the facts and require that the negligent act and the injury be fairly proximate. Thus, in Culp d/b/a Dr. Pepper Bottling Co. v. Northwestern Pac. Indem. Co., 365 F.2d 474, 478 (10th Cir. 1966), where the insured's employee became involved in an argument while unloading merchandise and in the course of the argument hit the claimant over the head with a bottle, it was held that the incident was not covered. The court stated, however, that a case of assault and battery might be within the coverage if, for example, the delivery operations were connected with the assault and battery. The reason for denying coverage in *Culp* was that the assault and battery was not even incidental to the operation of the truck.[3]

equally applicable general principles and have before and since added to that body of the law. Thus, in essence and in addition to the tenets advanced by plaintiff, we have said—except where otherwise indicated—that the parties have the right to employ whatever lawful terms they wish and courts will not re-write them. Alm v. Hartford Fire Insurance Company, Wyo., 369 P.2d 216, 217. In other words, the terms must not conflict with pertinent statutes or public policy. Such contracts should not be so strictly construed as to thwart the general object of the insurance. Miles v. Continental Casualty Company, Wyo., 386 P.2d 720, 722. To this should be added the concept that the words used will be given their common and ordinary meaning. 13 Appleman, Insurance Law and Practice, § 7402 (1943). The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, viewed in the light of what the parties must reasonably have intended. Wilson v.

Hawkeye Casualty Co., supra, 215 P. 2d at 873–875.
421 P.2d at 168.

3. See, however, Fidelity & Cas. Co. v. Lott, 273 F.2d 500 (5th Cir. 1960), where it was held that the ownership, maintenance and use clause covered liability for death of one sitting in the insured vehicle while the insured was attempting to shoot a deer and the deflected bullet went through the top into the passenger; Red Ball Motor Freight v. Employers Mut. Liability Ins. Co. of Wis., 189 F. 2d 374 (5th Cir. 1951), where the fueling of the insured truck in preparation for a trip was held to be use of the truck so that coverage extended to failure to close the valve on the pump after fueling, which in turn produced an explosion which was covered by the insurance on the truck; Vogt v. Hotard, 144 So.2d 714 (La.App. 4th Cir. 1962), where the insured negligently pulled down a tree with an automobile, causing the tree to strike and injure the plaintiff; National Indem. Co. v. Ewing, 235 Md. 145, 200 A.2d

In Continental Casualty Co. v. Fireman's Fund Insurance Co., 403 F.2d 291 (10th Cir. 1968), coverage was extended to an injury which occurred while gasoline was being pumped from a tank truck into filling station tanks, and a fire resulted from a third party's lighting a cigarette in the filling station's rest room. The lighting of the cigarette ignited fumes. Although the loading and unloading extension of the use clause was here employed, the court concluded that the causal link need only be a "but for" connection. In our case there is a "but for" connection and more. The evidence here is amply sufficient to support a conclusion that the use of the automobile was a substantial factor in the production of the injury.

Still another Tenth Circuit case which demonstrates that indirect consequences are covered is Columbia Casualty Co. v. Abel, 171 F.2d 215 (10th Cir. 1948). Here the injured person was a guest in an automobile driven by the insured. The latter made improper advances to the female passenger. She demanded that the car be stopped. However, he increased the speed and continued his misconduct. She was apprehensive that she would be attacked and she opened the door to jump from the automobile. He, in turn, speeded up and swerved it to the left. Her foot slipped and she fell to the pavement. In holding that this was incident to use of the vehicle, this court said:

It may be that the act of LaVerne Ellington in preparing to jump from the automobile or in jumping from it with the intent to land on her feet was one of the contributing causes of the accident with its resulting injuries. Even so, the act of the insured in speeding up the automobile and swerving it to the left causing her foot to slip, was also a contributing cause. But the policy obligated the company to defend any action against the insured in which bodily injury was alleged caused by accident and arising out of the ownership, maintenance, or use of the automobile, and to pay on his behalf all sums not in excess of the maximum fixed in the policy for which he should become liable for bodily injury brought about in that manner. It did not restrict or limit the obligation of the company in those respects to instances where bodily injury was caused solely and exclusively of all other causes by accident arising out of the ownership, maintenance, or use of the automobile. And where accidental injury is proximately caused by two or more concurrent causes only one of which is within the coverage of a policy of this kind, the company is liable even though other causes contribute to the accident. Zimmerman v. Continental Life Insurance Co., 99 Cal.App. 723, 279 P. 464; Pacific Mu-

680 (1964), where a passenger in the insured vehicle was thrown out of the car when the driver negligently drove into a snowbank and was hit by a second car sometime after the first accident successfully invoked the ownership, maintenance and use extension provision against the insurer of the vehicle; Merchants Co. v. Hartford Accident & Indem. Co., 187 Miss. 301, 188 So. 571, 192 So. 566 (1939), where poles left in the highway after use of them in extricating a truck held to be sufficiently connected with the use of the vehicle to provide coverage in respect to an injury occasioned when

an automobile later struck the poles; Carter v. Bergeron, 102 N.H. 464, 160 A. 2d 348 (1960), where the insured vehicle was leading and setting the pace for a truck which was following and which caused the death which was the subject of the litigation. The court reasoned that it was not necessary for the lead vehicle to have exerted physical force on the following vehicle in order for responsibility to arise. See also McCloskey & Co. v. Allstate Ins. Companies, 123 U.S.App.D.C. 177, 358 F.2d 544 (1966); Panhandle Gravel Co. v. Wilson, 248 S.W.2d 779 (Tex.Civ.App.1952).

tual Life Insurance Co. v. Smith, 166 Ark. 403, 266 S.W. 279.

171 F.2d at 218–219.

■ We are convinced that the causal relationship need not be a direct one; that it is sufficiently connected if the act which causes the injury is incident to the use of the vehicle. In our case the insured and his companions were, first of all, driving the vehicle. Secondly, they were discharging trash preparatory to returning the car to the home of Sinner. It was open to the jury to find that Sinner swerved the car just as the bottle was being thrown. We hold, therefore, that the breaking of the bottle and the injury to Harvey were not legally remote in relationship to the use of the vehicle.

There was adequate testimony to establish that Sinner was legally responsible for the throwing of the bottle in that he was shown to have not only consented to the act but to have counseled and encouraged it. Both Sinner and Lorenzen were thus shown to have been culpable and at the same time to have been using the vehicle within the meaning of the State Farm policy.

■ A further contention of appellant is that the general rules of construction enunciated by the Wyoming court do not apply in litigation between the insurance companies. We disagree. Under Wyoming law the appellee became subrogated to the rights of the injured person when it settled the case. *See* Gardner v. Walker, 373 P.2d 598 (Wyo. 1962) and Iowa National Mutual Ins. Co. v. Huntley, 78 Wyo. 380, 328 P.2d 569 (1958). That being so, appellee enjoys any and all rights which its insured had.

We have carefully considered the entire record and we find no error. The trial was conducted with commendable fairness.

The judgment is affirmed.