CHARLES D. BENEDICT, Appellee, *vs.* HENRY W. DAKIN, Appellant.

*Opinion filed December 22, 1909—Rehearing denied Feb. 3, 1910.*

1. CONTRACTS—*by what law governed—conflict of laws.* The law of the place where a contract is made governs the performance of its terms and conditions, except where it is the express intention of the parties that the contract is to be performed at a different place and under a different jurisdiction from the place where the contract is made, in which case the law of the place of performance governs.

2. SAME—*when compensation for services is determined by law of place where contract is made.* Where a contract employing a person to find a purchaser for certain property is made in a foreign State, where the property is located, and there is no agreement as to what the compensation shall be, the usual charge for such services in such State determines the amount of the compensation, though the agent secured the buyer in Illinois and brought the matter to his attention here.

3. SAME—*sale of all the stock of a corporation is a sale of its assets.* A contract employing a person to sell a saw-mill, railroad and real estate owned by two corporations is complied with by making a sale of all the capital stock of such corporations, as a sale of all the stock of a corporation is, in legal effect, a sale of all of its assets.

4. DEPOSITIONS—*what testimony should not be stricken out as hearsay.* In an action to recover commissions for the sale of property, testimony in the deposition of an employee of the buyer to the effect that the buyer stated to him that the property was for sale and asked him to look it up should not be stricken out as hear-

say, where the question at issue is not whether the buyer's statement was true, but whether he had at that time received notice from the plaintiff, who was the vendor's agent, that such property was for sale.

5. SAME—*objections to form of questions should be taken before trial by motion to suppress.* Objections to the form of the questions in a deposition should be taken before the trial by a motion to suppress and not when the depositions are read on the hearing; but error in sustaining such objections on the hearing is not harmful where the questions concerned a subject fully proved by other uncontradicted evidence.

6. EVIDENCE—*when proffered evidence is properly rejected.* Evidence offered for the purpose of impeaching a witness upon the ground that he had made statements out of court contradicting his testimony is properly rejected, where it relates to matters wholly immaterial to the issues being tried.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE W. PATTON, Judge, presiding.

ARND & ARND, for appellant.

GEORGE C. OTTO, and FRANK P. LEFFINGWELL, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Charles D. Benedict brought an action of assumpsit against Henry W. Dakin to recover commission on the sale of a saw mill and other machinery, about 20,000 acres of timber lands, and a railroad and its equipment used in connection with the lumber business, in the State of Louisiana. On a trial before the superior court of Cook county without a jury a judgment for $19,875 was rendered in favor of the plaintiff below, and that judgment has been affirmed by the Appellate Court for the First District. By his further appeal Dakin has removed the cause to this court for review.

The pleadings consist of a declaration containing only the common counts, to which are added a bill of particulars and a plea of the general issue.

The evidence tends to establish the following facts: Benedict was for a number of years prior to the transaction involved in this case engaged in the lumber business in Peoria, Illinois, and for several years had purchased lumber from appellant and his associates, who were manufacturers of lumber at Natalbany, Louisiana. In February, 1902, appellee was in Natalbany on business connected with his lumber yard, and while there appellant employed him to find a purchaser for the property of the Natalbany Lumber Company and the New Orleans, Natalbany and Natchez Railroad Company, an associated enterprise, and told appellee that if he was successful he would be properly compensated. The capital stock of both corporations was owned by appellant and his two associates, Caryl B. Young and George H. Richey, except two shares of the railroad stock which were owned by a man by the name of Smith. After obtaining detailed information as to the nature and character of the property to be sold, appellee returned to Illinois and presented the matter to Frederick C. Denkmann, who was the local manager of the lumber firm of Weyerhaeuser & Denkmann, who were doing a large lumber business at Rock Island, Illinois. Negotiations were immediately opened and carried on between Edward P. Denkmann and appellant until March 12, 1903, when appellant and his associates sold to the Weyerhaeuser & Denkmann Company the entire capital stock of the two corporations above named for $397,500, all of which has been paid and the stock duly transferred.

There is no room to doubt, under the evidence, that appellee was employed to find a purchaser for this property and that he was the procuring cause of the sale to the Weyerhaeuser & Denkmann Company, and that appellee was promised compensation in case he succeeded in finding

a purchaser. No amount of compensation was mentioned between the parties. The evidence shows that the usual and customary commissions in the State of Louisiana for making a sale of property such as appellant owned was five per cent. The trial court held that appellee's compensation was to be determined by the usual and customary commissions paid for like services in the State of Louisiana, where the property sold was located, and allowed five per cent of the gross amount of the sale. Appellant contends that the compensation should have been determined by the customary commissions paid for like services in Illinois, and the assignment of error upon the refusal of the court to so hold is one of the principal reasons urged for a reversal in this court. Appellant's argument in support of this contention is, that the purchaser having been found in Illinois the contract was performed in this State, and that the compensation should be determined by the custom prevailing here. We think this is a misapprehension. The property to be sold was located in the State of Louisiana. The contract of employment was made there and the sale was consummated in that State. While it is true that appellee presented this matter to Mr. Denkmann first in Illinois, yet .Denkmann did not purchase, nor did he agree to purchase, until he went to Louisiana and investigated the property. There was nothing in the terms of the contract of employment limiting the appellee to Illinois as the place where he might look for purchasers. The general rule is, that the place where a contract is made must govern the performance of its terms and conditions; but when it is the express intention of the parties that the contract is to be performed at a different place and under a different jurisdiction from the place where it is made, then the law of the place of performance must govern. (*Mason* v. *Dousay,* 35 Ill. 424.) There is here, however, nothing, either in the terms of the contract or in the subject matter thereof, to indicate that the parties contemplated a performance

of its terms at any place other than the place where the contract was entered into.

The appellant further insists that certain witnesses who testified by depositions taken in Louisiana concerning the usual and customary commissions charged in that State for such services, where the contract did not specify the compensation to be paid, did not show themselves qualified to express an opinion. This objection is not entirely without merit in so far as it applies to the witness Taylor. From the testimony of this witness it appears that he was in the real estate business, selling for others on a commission basis, but he said that he always operated under a contract fixing the compensation, which was usually five per cent of the amount of the sale. He did not say that he was acquainted with the usual and customary commissions paid where no contract existed. But this objection is without force as applied to the witnesses Wisner and Dresser, and their evidence is amply sufficient to warrant the finding of the court, leaving out of view the questionable evidence of the witness Taylor. We are therefore of the opinion that any error committed in respect to Taylor's evidence does not require a reversal of the judgment.

Appellant also contends that there should have been a finding for him because the contract of employment was to sell a saw mill, real estate and a railroad, while the evidence shows that what appellee really did was to find a purchaser who bought the stock of two corporations which owned the tangible property which he was commissioned to sell. The distinction which appellant seeks to make in this regard is too finely drawn to be of practical value. The sale of all of the stock of the corporation is, in legal effect, a sale of all of its assets. The mere fact that the parties found it more convenient to transfer all of the stock rather than to make conveyances of its assets does not change the substance of the transaction.

The appellant insists that the court erred in refusing to strike out certain interrogatories, and the answers thereto, in the deposition of the witness Easterling. Easterling was an agent of Weyerhaeuser & Denkmann, located in the south for the purpose of buying timber lands for his principals. Within a few days after the appellee submitted the proposition to Frederick C. Denkmann, the evidence shows that Easterling called up appellant over long distance telephone and sought to interview him in reference to a sale of the property in question. The deposition of Easterling was taken by appellee mainly for the purpose of showing that what he did in reference to purchasing the property was at the instance of Frederick C. Denkmann after appellee had brought the matter to his attention. One of the objections made to the deposition is that the witness stated what Denkmann had said to him about the property being for sale. The objection urged is that this evidence is mere hearsay and should have been excluded. We do not so regard it. The question here is not whether Denkmann told the truth when he informed his agent that the property was for sale, but the inquiry was whether appellee had before that time visited Denkmann and brought the subject to his attention in such way as to enable him to assure his agent that the property was for sale and direct him to take the matter up with appellant. A further objection made to the deposition is that the witness referred to certain correspondence between himself and appellant and stated certain facts which were communicated to him by letter. This part of the deposition is open to the objection that it was not the best evidence, but since the facts thus improperly stated were entirely irrelevant and immaterial to the issues being tried, we are unable to see that any harm resulted to appellant from the ruling in this regard. There are some other objections made to the deposition of Easterling, but we think that what has already been said with reference to the other objections will apply to those not discussed.

On motion of appellee the court suppressed the depositions of the witnesses Robinson and Noble, which had been taken by the appellant for the purpose of impeaching Easterling by showing that his general reputation for truth and veracity was bad in the neighborhood in which he resided. Appellant insists that the court erred in suppressing these depositions. The witness Robinson, after stating that he had known Easterling four or five years, was asked the following question: "Do you know his reputation for truth and veracity among his acquaintances?" The question was objected to as incompetent, immaterial and irrelevant, and attention was called to the fact that the word "general" was not in the question. The witness answered in the affirmative, and in answer to another question said that his reputation was bad, and that from such reputation the witness would not believe him on oath. The questions put to the witness Noble and the answers made by him are very similar to those above recited. While the form of the questions put to these witnesses is objectionable, we are of the opinion that the objection should have been taken on a motion to suppress before the trial was entered upon, and not when the depositions were being read on the hearing. The rule is well established that objections to the form of questions in depositions must be made before the trial is entered upon. All objections that could be cured by re-taking the deposition should be made before the trial. (*Toledo, Wabash and Western Railway Co.* v. *Baddeley,* 54 Ill. 19; *Thomas* v. *Dunaway,* 30 id. 373.) But we do not think that the error in this regard is reversible, since there were three other witnesses who testified to the general bad character of Easterling and whose evidence is uncontradicted. We do not see that the situation would have been changed if the answers of Noble and Robinson had been considered in connection with the testimony of Wilmot, Benway and Richardson, which was allowed to remain in the record and was considered by the court. These three

witnesses having testified that they were acquainted with Easterling and knew his general reputation for truth and veracity and that the same was bad, must, we think, be regarded as establishing the fact sought to be proven, at least to such extent as to render the ruling in reference to the other two depositions harmless.

Appellant next contends that the court erred in sustaining objections to the testimony of Jennie White, a stenographer in the office of appellant's attorneys. It appears that after this suit was commenced and before it was tried in the court below, appellant came to the office of Arnd & Arnd, his attorneys, accompanied by the witness Easterling. The witness Jennie White was offered by appellant to testify to certain statements that Easterling made in her presence and which were taken down by her in shorthand at the time, in regard to the matters in controversy in this suit. The purpose of introducing the evidence of the stenographer was to impeach Easterling by showing that he had made statements at that time contradictory of his testimony on the trial. The only facts which the stenographer would have stated had she been permitted to testify, related to the time when Easterling first became acquainted with the property of the Natalbany Lumber Company, and the statement that he did not know that appellee had any connection with the sale of the plant and property to Weyerhaeuser & Denkmann. Neither of these matters was material to the issue being tried. It could make no difference how long Easterling had known the property prior to the time it was sold. It is not claimed that he learned that the property was for sale until after appellee had visited Rock Island and had his first interview with Frederick C. Denkmann. His mere acquaintance with the property was a matter of no consequence whatever. Besides, there is nothing in his deposition which this evidence tended to contradict. It is equally unimportant whether Easterling knew that appellee was connected with the sale of the property.

Easterling, as the agent of the purchasers, acted under their instructions, and it was no concern of his through whose agency or by what means his employers had their attention drawn to the proposition. On the ground that the proffered evidence of Jennie White was immaterial, and on the further ground that the foundation for the introduction of such evidence was not sufficiently laid in the deposition of Easterling, there was no error in sustaining objections to her testimony; and for the same reasons the court did not err in sustaining the objections to appellant's testimony in regard to the statements made by Easterling in the office of appellant's attorneys.

It is finally contended by appellant that the court erred in its holdings upon propositions of law submitted. We have examined the several rulings in this regard and find that the errors complained of do not exist. The rulings of the court on the propositions of law submitted were in accordance with the law applicable to the facts.

Finding no error in this record for which it should be reversed, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*