**William RYAN, Jr., Plaintiff,**

v.

**James NAPIER and L. O. Napier, Defendants.**

**No. 64 C 1488.**

United States District Court
N. D. Illinois, E. D.

April 18, 1966.

Raymond K. Berg, of Simon, Teitelbaum & Wolfberg, Chicago, Ill., for plaintiff.

P. Sveinbjorn Johnson, of Michaels & Johnson, Chicago, Ill., for defendants.

ROBSON, District Judge.

This litigation arises out of a written contract of employment in which the defendants agreed to employ the plaintiff as the manager of their insurance agency in Wisconsin. The contract was terminated in May of 1959 when the defendants closed the agency and quit doing business in Wisconsin. Plaintiff later filed this suit alleging that a two per cent renewal commission on business written by him for the agency was due him. The defendants answered, filed an affirmative defense and a counterclaim.

The answer admits that renewal commissions were no longer paid after the termination but asserts that the agreement was terminated because of the plaintiff's own wrongful and improper conduct in the sales of insurance policies.

The affirmative defense asserts that defendants closed their Wisconsin agency because of the manner in which the plaintiff effected sales of insurance and that the plaintiff became employed by an accident and health insurance company within six months of the contract in violation of paragraph 6 of his agreement.

The counterclaim asserts that defendants were required to close their Milwaukee office because plaintiff permitted his agents to represent that they were agents of the State of Wisconsin; that the insurance they offered was required under Wisconsin's Workmen Compensation laws and that these representations were in violation of plaintiff's obligation to use his best efforts to perform his duties as manager in a faithful and honest fashion.

A bench trial was had on the issue of liability. Proposed findings of fact and conclusions of law have been submitted by the parties and the issues briefed.

On January 7, 1959, plaintiff entered into a written agreement with defendants. Pursuant to that agreement, defendants appointed plaintiff as manager of their Personal Compensation insurance agency in Milwaukee, Wisconsin, an agency of the National Travelers Life Company of Des Moines, Iowa, which agency was owned in partnership by the two defendants. The agreement provides that plaintiff is to receive a commission of two per cent of all premiums on policies written through the agency and a two per cent commission of all premiums on the policies renewed from October 1, 1957, which had been written by the agency.

The agreement also provides that should it be terminated and plaintiff has not violated any of his obligations under said agreement, defendants shall continue to pay plaintiff the vested renewal commissions as long as policies continue to renew.

Defendants sent certain brochures from Chicago into Wisconsin with the intent of working up leads for insurance sales. These pamphlets were brought to the attention of the Wisconsin Insurance Commissioner, Paul J. Rogan. He contacted Thomas J. Duffey, the attorney who had represented National Travelers Life in procuring a license to write insurance in Wisconsin. The Commissioner informed Mr. Duffey that he believed these pamphlets were in violation of Wisconsin's lottery laws. Mr. Duffey con-

tacted plaintiff who arranged a meeting to discuss the matter with defendants.

A luncheon meeting was held in April of 1959 in Milwaukee. Present at that meeting were Mr. Duffey, the plaintiff and both defendants. The mailing piece was there discussed but the testimony is in conflict as to whether plaintiff has seen any copies or knew of any use or distribution of these pamphlets prior to the meeting. Plaintiff testified that he did not have any prior knowledge of the use of these brochures while defendant James Napier testified that in Illinois, in January of 1959, he showed plaintiff how to solicit leads developed by the pamphlets, and in February of 1959 talked to him on the telephone about the use of the brochures.

The day following the luncheon meeting, a similar meeting was held in the office of the Wisconsin Insurance Commissioner at Madison, at which the mailing pieces were again discussed. The Commissioner expressed the opinion that the use of these mailing pieces violated the Wisconsin lottery laws and expressed the hope that plaintiff would disassociate himself from the defendants.

The agreement was then terminated on May 15, 1959, at the request of plaintiff and with the consent of defendants. A short time thereafter defendants closed their Milwaukee agency.

Within six months of the termination of the agreement, plaintiff became an agent of the General Life Insurance Corporation of Wisconsin, a company authorized to sell accident and health insurance in the State of Wisconsin.

After several written requests for an accounting of the money he felt was owing to him, plaintiff arranged a luncheon meeting, which took place in June of 1963 in a Chicago restaurant. In attendance were plaintiff, defendant James Napier and Mr. David Delahunt, an associate of plaintiff. The purpose of this meeting was to determine what might be done concerning plaintiff's renewal commissions in connection with his employment contract with defendants. Defendant James Napier, whether in jest or

seriously, indicated that he felt plaintiff had nothing coming to him.

Since the employment contract was terminated, defendants have paid no renewal commissions under the contract to plaintiff.

██ The Supreme Court's opinion in Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), announced that under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938), the federal courts, when deciding questions of conflict of laws in diversity cases, must follow the rules prevailing in the state in which they sit. In Illinois, the validity, construction and obligation of a contract is determined by the law of the place where it is made or is to be performed (Harris v. American Surety Co. of New York, 372 Ill. 361, 24 N.E.2d 42 (1939)). If a contract is made in one state to be performed in another, the law of the place where the contract is to be performed will prevail over the law of the place where the contract was entered into (Benedict v. Dakin, 243 Ill. 384, 90 N.E. 712 (1910)).

██ The agreement in question was signed at Chicago, Illinois, and appointed plaintiff manager of the Personal Compensation Agency in Milwaukee, Wisconsin. Employment in this case was performance, which was to be carried out in Wisconsin. Wisconsin, therefore, was the place of performance of this agreement. This contract was made in one state, Illinois, to be performed in another, Wisconsin, and, therefore, the law of Wisconsin is the law applicable to the determination of the obligations thereunder.

██ The court concludes that under the Wisconsin law, defendants are liable to plaintiff for the two per cent vested renewal commissions due and owing from May 15, 1959, to the present.

Although it is not clear whether plaintiff knew of the distribution of the mailing pieces prior to the April meeting in Milwaukee, that fact has no substan-

tial effect on this litigation. James Napier admitted that the defendants were the persons who originated the mailings in Chicago. Therefore, they are the ones responsible for the difficulties with the Wisconsin Insurance Commissioner and the ultimate termination of the agreement. The defendants' own acts of distributing the mailing pieces into the State of Wisconsin, which the Wisconsin Insurance Commissioner believed to be in violation of its lottery laws, were breaches of this employment contract and was the conduct which caused the closing of defendants' Milwaukee office.

■■ One who by mutual contract confers on another a right, or imposes a duty, impliedly agrees not to defeat that right or make impossible performance of a duty by any affirmative acts of his own (George v. Oswald, 273 Wis. 380, 78 N.W.2d 763 (1956)). In addition to the express covenants of a contract, there may be an implied agreement that neither party will do anything to prevent or tend to prevent its performance (Gessler v. Erwin Company, 182 Wis. 315, 193 N.W. 363 (1924)). It was held in Edward E. Gillen Co. v. John H. Parker Co., 170 Wis. 264, 171 N.W. 61, 174 N.W. 546 (1919), that where performance by one party is impossible without the cooperation of the opposite party, there is an implied obligation on the part of the opposite party not only not to hinder the party performing but to do everything reasonably necessary in order to enable him to perform. Failure to do so is a breach of the contract. In accord with these cases are Restatement, Contracts § 295 (1932); 17A C.J.S. Contracts § 469, at pp. 638–642, and 5 Williston on Contracts (3rd ed.) §§ 676 and 677A. This court holds that defendants first breached this contract.

■ There is no evidence to support defendants' affirmative defense that plaintiff conducted himself in any inappropriate manner in the sale of insurance or that he was guilty of any misconduct which would be considered a breach of his contractual obligations.

The court concludes there is no basis for the allegation that this plaintiff was a wrongdoer himself and it is, therefore, no defense to this action (Richey v. Union Central Life Insurance Co., 140 Wis. 486, 122 N.W. 1030 (1909)). In the *Richey* case, supra, plaintiff was under a contract as an insurance agent for the defendant company. The defendant withdrew from the State of Wisconsin, ceased to do business there, and cancelled its contract with the plaintiff. In a suit on the contract, the court, in holding for the plaintiff, said, at 489, 122 N.W. at 1031:

"* * * Under the allegations and proof on this subject it is not claimed or shown that the agreement was terminated because respondent failed to comply with the imposed conditions, duties, and obligations, or because he failed to conduct his business in a satisfactory manner. Under these circumstances appellant cannot assert that the agreement was terminated under the foregoing stipulation and this claim need not be further considered."

The case at bar is stronger on its facts than Wolk v. Benefit Association of Railway Employees, 172 F.Supp. 62 (W.D. Pa.1959), wherein the defendant insurance company made available for distribution certain prospectuses to secure group life insurance applications, which prospectuses were neither in conformity with the Pennsylvania law nor approved by the Pennsylvania Commissioner of Insurance. The court held that even though the plaintiff salesman had distributed the prospectuses, he was nevertheless entitled to prosecute his claim for the value of his labors against the insurer. The court said, at 63–64:

"* * * [T]he knowledge and information attendant to the legality of proferred Group Life Insurance, and its conformity or nonconformity with state law, implicity rested with the defendant, which formulated the Group Insurance Plan and made the same available to plaintiff."

The court concludes that plaintiff did not violate his contractual undertaking to use his best efforts as manager or his obligation to perform his duties in a faithful and honest manner and is entitled to the renewal commissions.

There is no merit in defendants' assertion that complaints were received by the Wisconsin Department of Insurance concerning the manner in which plaintiff and his staff effected sales of insurance. There is no evidence tending to show that plaintiff or his agents palmed themselves off as agents of the State of Wisconsin or that they represented the insurance they were selling was required under the Workmen's Compensation laws of Wisconsin.

Defendants argue that paragraph 6 of the agreement bars any recovery under the contract. They state that because paragraph 6 provides that if plaintiff became employed by another accident and sickness insurance company within six months from the termination of the agreement he forfeited all right to his vested renewal commissions. The defendants state that because plaintiff did become employed by the General Life Insurance Company of Wisconsin within six months from the termination of this employment contract and because that company sells accident and sickness insurance, it is an accident and health insurance company and plaintiff is precluded from any recovery.

The court in Levin v. Grant, 238 Wis. 537, 298 N.W. 63, 300 N.W. 169 (1941), said that it would avoid or relieve against forfeiture as the result of a breach of a condition subsequent wherever possible when it could be done without doing violence to the contract between the parties. This court believes that giving up renewal commissions upon going to work for another accident and sickness insurance company in the State of Wisconsin does provide for a forfeiture and is a condition subsequent. Relief against this forfeiture will not do violence to this contract.

It is said in 17A C.J.S. Contracts § 407, at 497:

" * * * [T]he party claiming the benefit of a contract provision for forfeiture must not be himself in default * * *."

The court is of the opinion that had it not been for the acts of defendants, plaintiff would not have had to seek other employment. It was defendants' acts which first breached the contract. They now seek forfeiture of plaintiff's renewal commissions. In Dumke v. Puhlman, 62 Wis. 18, 21 N.W. 820 (1884), one of the parties sought to enforce a $50 per day forfeiture delay penalty. The court said, at 20, 21 N.W. at 821:

" * * * If the defendant wished to rest, and insist upon this forfeiture for the delay of the plaintiffs, he should be wholly without fault himself, and have been all the time ready for a strict performance by the plaintiffs, and should not have obstructed such strict performance in the least."

Although the termination of the employment was by agreement, it was preceded by the unworthy action by the defendants, which precipitated the termination of the contract and withdrawal from the state. There is to be no termination of the renewal commissions because the defendants rendered plaintiff's conduct unavoidable. See Restatement of the Law on Contracts § 307.

If the court were to enforce paragraph 6 of the agreement, such enforcement would operate harshly on plaintiff. The effect of this clause was to prevent competition by plaintiff upon leaving defendants' employment. In Union Central Life Insurance Co. v. Balistrieri, 19 Wis. 2d 265, at 270, 120 N.W.2d 126 at 129 (1963), the court in dealing with a clause similar to the one at bar said:

" * * * Although the agreement is not expressed as a restriction against competition by the employee its undoubted object and effect is that of a powerful deterrent to the employee's exercise of the right to compete * * *."

Inasmuch as the Personal Compensation went out of business in the State of Wisconsin at the time of the termination of the agreement, plaintiff could not have competed even if he desired to do so. Any possible reason for enforcement of this condition has now disappeared.

The court believes that because plaintiff did go to work for an insurance company which was licensed to write accident and sickness insurance in Wisconsin within six months of the termination of his contract with the defendants, that fact cannot be considered a breach of paragraph 6. If it can be considered a breach, it was a mere technical breach and the forfeiture provision should be excused. It would be hypertechnical to hold that the company for which plaintiff went to work upon termination of the contract was an accident and sickness insurance company.

Defendants' Exhibit No. 2, a Xerox copy of pages 696–697 of a 1960 issue of Best's Life Insurance Reports, shows that although the General Life Insurance Company of Wisconsin is licensed to write both life and accident and health insurance, the balance sheet reveals premiums on accident and health insurance a *$197 asset*. The report further reveals that the great bulk of insurance written was life insurance. The insurance company's type, for the purpose of this forfeiture clause, would be determined by the majority of the business it writes, not by a mere negligible aspect of its business. The primary source of premium income of the company was from life insurance sales, not from accident and sickness policy sales. The court in Copp v. German American Insurance Co., 51 Wis. 637, at 639, 8 N.W. 127, 616 (1881), in holding that a trivial or merely technical departure from performance of a condition which is not a substantial breach will not be permitted to work a forfeiture, said:

"And for a court, in such a case, to impose the penalty of entire forfeiture

for the want of a literal compliance, would be to lend itself to the accomplishment of ingenious and skillful rascality."

Other authority exists for granting judgment for this plaintiff, including: Union Central Life Insurance Co. v. Balistrieri, supra, Sterling Colorado Agency, Inc. v. Sterling Insurance Co., 266 F.2d 472 (10th Cir. 1959), Matheney v. McClain, 248 Miss. 842, 161 So.2d 516 (1964), 6A Corbin on Contracts § 1394, pp. 89–104, and the Re-Statement of the Law, Contracts § 295.

The issue of liability is found for the plaintiff inasmuch as he violated none of the obligations under the agreement, the need for termination being defendants' own unworthy acts and breach. The affirmative defense asserted is not supported by the evidence and paragraph 6 of the answer is not a defense to this suit. Plaintiff is entitled to receive his two per cent vested renewal commissions on all insurance premiums paid on policies written by the Personal Compensation Agency from May 15, 1959. The defendants' counterclaim, being unsupported, is without merit, and the counter-defendant is found not guilty of those allegations.

The plaintiff's proposed findings of fact are adopted by the court with the exception of paragraphs 9 and 11 which are deleted and revising paragraph 13 so as to read:

"That plaintiff did not write accident and health insurance for any insurance company after May 15, 1959, whose major business was accident and health insurance."

The plaintiff's proposed conclusions of law are adopted in their entirety.

The plaintiff is directed to redraft within ten days the findings of fact in conformity with this court's opinion. The cause is continued to May 4, 1966, to consider means of disposing of the issue of damages.