The WESTERN CASUALTY AND SURETY COMPANY, Plaintiff,

v.

Donald L. BRANON and Ruth Erbes, Administrator of the Estate of June Gambill, Deceased, and Douglas J. Grady, Defendants.

Civ. No. 77–4003.

United States District Court,
E. D. Illinois.

Jan. 19, 1979.

Howard Boman, Dunham, Boman & Leskera, East St. Louis, Ill., for plaintiff.

Harold H. Pennock, Jr., Hodson & Pennock, Ltd., Charles E. Holt, Centralia, Ill., for defendants.

FOREMAN, Chief Judge:

## ORDER

The parties to the this lawsuit seek a declaratory judgment as to the legal meaning of the term "arising out of the . . use" of a vehicle. The parties have stipulated to the pertinent facts and ask the Court to determine the legal implication of the above phrase in an automobile insurance policy.

The stipulated facts are that on December 11, 1975 at around 6:30 P.M., seven persons were riding in a Ford van in the Centralia area. The owner and driver of the van, Donald Branon, had previously placed a .22 lever action long rifle and a 12 gauge shotgun on the floor in the center of the van. Both guns were uncased and the .22 rifle was loaded when Branon placed it in the van.

Seated in the front seat were Branon, June Gambill and John Meyers, while Doug and Kathy Grady and their eighteen month old daughter, Misty, sat in a U-shaped seat in the back of the van along with Darrel Branon, the driver's brother. The guns were laying on the floor in between the front and back seat of the van. Darrel Branon noticed that Misty Grady was playing around with or walking on the guns and told Kathy Grady that that was dangerous. Kathy picked up the child and told Doug Grady to move the guns. Meanwhile, a verbal exchange took place between Doug Grady and June Gambill. Grady said, "I ought to shoot you". With this, Grady pointed the gun at Gambill, and the weapon discharged, bringing about Gambill's death. The pathologist's report found that June Gambill's death was caused as a result of a gunshot wound in the back of the head.

These are the stipulated facts to which the parties ask this Court to apply to the automobile insurance policy involved. The policy written by the plaintiff, The Western Casualty and Surety Company, states in relevant part:

To pay on behalf of insured all sums which the insured shall become legally obligated to pay damages because of:

A. bodily injury

B. property damage; *arising out of* the ownership maintenance or *use of the automobile.* (Emphasis added)

■ This matter is before this Court based on diversity jurisdiction under 28 U.S.C. § 1332. The contract was apparently entered into and to be performed in Illinois; consequently, the law of Illinois controls the legal issues. *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Ryan v. Napier,* 252 F.Supp. 730 (N.D.Ill.1966). This exact issue has not been faced squarely by the Illinois courts, but the case law of other jurisdictions and the unique factual setting of this case leaves this Court with but one possible interpretation of the application of the clause "arising out of the . . . use" of the automobile.

■ At the outset, the Court notes that the insurance contract was drawn by plaintiff and any ambiguity should be strictly construed against the plaintiff, *Richland Knox Mutual Ins. Co. v. Kallen,* 376 F.2d 360 (6th Cir. 1967), and that the term "arising out of the . . . use", in automobile liability policies has been held to be a broad, general and comprehensive term effecting broad coverage. As the defendant states in his brief, "arising out of the use" has been held to mean "originating from", "having its origin in", "growing out" or "flowing from". *Insurance Company of North America v. Royal Indemnity Co.,* 429 F.2d 1014 (6th Cir. 1970). The defendants correctly point out that the term using or use of a vehicle has been a general catch all term construed by the courts to include all proper uses of a vehicle. *Appleman Insurance Law and Practice* § 4316 (1962). The injury need not be the direct and proximate cause in a strict legal sense of the tort liability, *Smith v. Travelers Indemnity Co.,* 32 Cal.App.3d 1010, 108 Cal.Rptr. 643 (1973).

■ The proper test is that a causal connection must exist between an accident or injury and the use of a vehicle in order for the accident or injury to come within the meaning of the clause "arising out of the

use" of a vehicle, *United States Fidelity and Guarantee v. Western Fire,* 450 S.W.2d 491 (Ky.App.1970) (*see also* cases in annotation at 89 A.L.R.2d 150). In *Appleman Insurance Law and Practice,* it is stated that the injury must have arisen out of the inherent nature of the automobile as such, in order to bring the injury within the clause. *7 Appleman Insurance Law and Practice,* § 4317 p. 146.

Both sides have submitted briefs on the legal issue involved. Defendants have made a very well thought out argument contending that Ms. Gambill's death did, in fact, arise out of the use of the automobile. The Court feels, however, that defendants' cited cases are distinguishable from the instant case.

■ Defendants contend that *Allstate Insurance Co. v. Truck Exchange,* 63 Wis.2d 148, 216 N.W.2d 205 (1974); *Fidelity and Casualty Company of New York v. Lott,* 273 F.2d 500 (5th Cir. 1960); *Laviana v. Shelby Mutual Insurance Co.,* 224 F.Supp. 563 (D.C.Vt.1963); *Travelers Insurance Co. v. Aetna Casualty and Surety Co.,* 491 S.W.2d 363 (Tenn.1973); *Reliance Insurance Co. v. Walker,* 33 N.C.App. 15, 234 S.E.2d 206 (1977) and *Ohio Farmers Insurance v. Landfried,* 348 F.Supp. 486 (D.C.Pa.1972) stand for the proposition that an accidental discharge of a gun within an automobile "arises out of the use" of that automobile within the meaning of the insurance policy. Although the Court agrees that all of these cases found the activity involved arising out of the vehicle's use; they are all factually distinguishable from the present facts. In *Truck Exchange, Laviana* and *Aetna,* the issue involved was whether an accident occurring while loading or unloading a gun into the car arises out of the use of the vehicle. The law is very clear that loading and unloading of a vehicle are part of the broad clause arising out of the use. Those cases involved explicit contractual language including the term "loading" as arising out of the use of the car. The only issue involved in those cases was whether the gun was in fact being loaded in the car. That issue is in no way present in this case.

In the *Lott* case the vehicle was being used to follow deer while hunting. The driver stopped the car and rested the gun on the roof of the car in order to fire the gun. For some reason, the bullet deflected and struck a passenger. The vehicle in *Lott* was being used as part of the hunting excursion. Consequently, the *Lott* case is not factually analogous to the present case.

*Reliance* and *Ohio Farmers* involved accidental weapon discharges in respectively, a truck with a permanent gun rack and a police car. Both of these holdings were based on the inherent use of the vehicle. It can be assumed to be reasonably within the contemplation of the parties to an insurance agreement that a car with a gun rack might be used to carry a gun. The Court in *Ohio Farmers* held that the purpose of a police car is to maintain order; so inherent in the use of that car is the possibility that a weapon might accidentally misfire.

Defendants' other cited cases involved situations where a car hit a bump or made a sudden change of direction and an injury resulted. These cases properly held that the injury arose out of or was causally connected with the use of the vehicle. (*See Southeastern Fidelity Insurance Co. v. Stevens,* 142 Ga.App. 562, 236 S.E.2d 550 (1977) and *State Farm Mutual Auto Insurance Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973)). In the instant case, the stipulated facts indicate that the operation of the van had no connection with the shooting of the gun.

The elements present in the defendants' cited cases that are missing in the present case are causation of any kind or any connection with the use of the automobile. The action by Doug Grady of picking up a rifle and stating, "I ought to shoot you" and then having the gun somehow discharge have absolutely no connection with, nor do they in any way arise out of, the use of the vehicle. The fact that this tragic incident occurred in a van is totally fortuitous.

The Court feels that a number of cases have properly analyzed analogous factual settings and that these cases indicate as the plain language of the insurance contract clearly does, that a fortuitous accidental shooting does not, merely because it takes place in a car, arise out of the use of the automobile.

In an almost identical setting, an Arizona state court held that an "arising out of the . . . use" clause in an automobile insurance contract did not provide coverage where one man was accidentally shot by a companion as they returned from a hunting trip, *Brenner v. Aetna Ins. Co.,* 8 Ariz.App. 272, 445 P.2d 474 (1968). That court distinguished a number of other cases which found that an injury arose out of the use of the vehicle and held that an injury does not arise out of the use of a vehicle simply because of the discharge of a gun in the hands of someone who happened to be riding in a vehicle at the time.

At page 478 of the opinion, the court discussed the fortuity of the occurrence and stated:

> That the situs of the accident was in fact within a motor vehicle and the fact that both the tort-feasor and the injured party were "using" the car at the time does not make the injury one "arising out of the . . . use" of [a] vehicle.

The *Brenner* case involved a dispute over insurance coverage between the automobile insurer and the homeowner insurance company. The automobile policy included accidents which arose out of the use of an automobile while the homeowner policy expressly excluded coverage of any accidents arising out of the use of an automobile. The Court held under both policies that the injury did not arise out of the use of the vehicle. (Consequently, the homeowners policy was applicable since it only excluded coverage for injuries arising out of the use of a vehicle and this injury did not so arise.)

Two other cases stand for the proposition that the accidental discharge of a gun inside of a vehicle is not an accident that arises out of the use of the vehicle. In *United States Fidelity and Guarantee Co. v. Western Fire,* 450 S.W.2d 491 (1970), a gun discharged while four college students were

**1212**

driving in the country. That court held that the shooting accident was not sufficiently use connected to be considered reasonably to have been within the contemplation of the parties to the automobile insurance contract. That court required some causal relation or connection between the accident and the use of the vehicle. There, as in this case, no connection existed between the shooting and the use of the car.

In *National Union Fire Insurance Co. of Pittsburgh v. Bruecks,* 179 Neb. 642, 139 N.W.2d 821 (1966), a gun discharged while a hunter was unloading it, inside of his vehicle. The court in *Bruecks* discussed at length the duty of courts to construe insurance contracts strictly against an insurance company and to broadly construe the term "use". But that court was forced to conclude that the fact that the vehicle was the situs of the accident was not sufficient to make it arise out of the use of the vehicle. The court found the term "arising" to be unambiguous and further the fact that the gun discharged within a car did not make the accident arise out of the use of that car.

The Court has carefully considered the cases and secondary sources cited by both parties and cannot escape the conclusion that the clear intent of the parties to the insurance contract was that coverage existed only to matters arising out of the use of the vehicle and that under these facts, a fortuitous discharge of a rifle prompted by the apparently careless action of a third party can in no way be seen as arising out of the use of the vehicle. Doug Grady's action had nothing to do with the inherent use of a van nor were his actions, or the firing of the gun, in any way causally related or connected to the use of the van.

For these reasons, the Court finds that under these stipulated facts the shooting of June Gambill did not arise out of the use of the vehicle within the meaning of the insurance policy involved in this case. Therefore, insurance policy number H611 0980(1) does not cover the incident arising out of these stipulated facts. Judgment for plaintiff.

IT IS SO ORDERED.