255 S.W.2d 72 (1953)
E. C. ROBINSON LUMBER CO.
v.
LADMAN et al.
No. 28445.
St. Louis Court of Appeals. Missouri.
February 17, 1953.
Rehearing Denied March 13, 1953.
*73 Henri Sursa, Fredericktown, Finley & Lucas, Ralph T. Finley, St. Louis, for appellant.
Smith & Smith, Taylor Smith, Jr., Farmington, for respondent.
HOUSER, Commissioner.
This is a suit by E. C. Robinson Lumber Company, a corporation, against Clifford Ladman, contractor, and Ann Settle, owner, on an account for building materials sold and delivered to defendants for use in the building of a dwelling house, and to establish a materialman's lien thereon. Tried to the court without a jury judgment was rendered for the lumber company and against Clifford Ladman in the sum of $2,661.51, to be satisfied out of the property of Clifford Ladman, failing in which plaintiff was adjudged entitled to a lien against the property of defendant Ann Settle, and sale of the property was ordered to satisfy the judgment. Following the entry of judgment Clifford Ladman took no further action. Ann Settle has appealed to this court.
The petition was in conventional form. Paragraph 4 thereof follows:
"That on or about the said 14th day of July, 1950, the plaintiff, at the request of the defendant, Clifford Ladman, sold, furnished and supplied to the said Clifford Ladman, lumber and building materials, to be used in the construction and the erection of the aforementioned dwelling house on the *74 above described real estate. That the plaintiff, between the 14th day of July, 1950, and the 18th day of November, 1950, inclusive, sold and delivered to the defendant, Clifford Ladman, lumber and building materials at the price and reasonable value of $3,107.01, for use and which were used in the construction of said building."
The particulars of the debt, dates of delivery, an itemized list of the materials furnished and prices charged appeared in detail in attached Exhibit A. Clifford Ladman filed a general denial. Ann Settle filed an answer in two counts. Paragraph 3 of Count I follows:
"Defendant Ann Settle admits that plaintiff sold and delivered lumber and building materials to defendant Clifford Ladman as alleged in paragraph 4 of plaintiffs petition and that the same was used in the construction of the dwelling house described in plaintiffs petition and owned by defendant Ann Settle, but states that she does not have sufficient knowledge to admit or deny the dates of delivery of said materials, or the quantity and value thereof as alleged in paragraph 4 of plaintiffs petition."
Count II set up an affirmative defense based upon estoppel or waiver, in which it was alleged that upon learning that her contractor owed respondent for materials furnished for her construction she proposed to respondent's manager to make payment by check jointly to the contractor and respondent, but that the latter's manager stated that joint payment was not necessary; that he trusted the contractor to pay respondent after appellant paid the contractor; that the contractor's father had promised to pay respondent if the contractor did not; and that respondent "would not thereafter hold defendant (appellant) liable for materials furnished the said Clifford Ladman for the construction of her (appellant's) dwelling," whereupon, relying upon the assurances of respondent's manager, she paid the contractor in full. Respondent's reply to Count II of appellant's answer was a general denial. Respondent filed a motion to strike Count II on the ground that the allegations were immaterial and failed to state facts constituting a legal defense. The motion to strike was heard before trial and taken under advisement. After all of the evidence was heard the trial court sustained the motion to strike, and then rendered judgment for plaintiff and against defendants on the general issues.
The evidence favorable to respondent showed the following state of facts: The lumber company sold building materials to Clifford Ladman, who had a contract with Ann Settle to build a dwelling house for her on real estate which she owned in Farmington, Missouri. These materials were purchased at different times between July 14 and November 18, 1950. The business practice was to supply materials according to lists and requirements submitted by the contractor or property owner. Each sale was represented by an invoice or sales ticket written to a specific job or person. When an order was filled the material would be loaded, checked and delivered to the job site. The tickets were prepared on the date of delivery. Some of the material in the case at bar was delivered direct to the contractor at respondent's office in Flat River. Eighty-three sales slips covering the various items listed in Exhibit A were marked, identified and introduced in evidence. A sales ticket supported each item in the account. The company's ledged sheets reflected each of these sales and showed that the total value of the materials sold to Clifford Ladman for the Settle job after the allowance of all credits was $2,693.93. The charges made for the materials listed were correct and represented the fair and reasonable market value of the various items as of the date of sale. The entries in the ledger sheets corresponded to the statement attached to the petition.
On cross-examination of James White, respondent's manager, appellant elicited that White did not personally deliver and did not have personal knowledge of the delivery of the materials to the Ann Settle property, except on one or two occasions; that White took the contractor's word that material ordered should be charged to a *75 particular job; that respondent's three truck drivers were instructed to have Dale Cooper, Clifford Ladman or one of Ladman's helpers sign the sales tickets upon delivery of materials to the job site; that the only way the witness would know that particular material was delivered to a particular job was by the signatures on the delivery tickets; that Ladman had nine other running accounts with respondent at that time. No other evidence of delivery or use of the materials in the building was offered by respondent.
Appellant Ann Settle did not offer any evidence on the questions of quantity, value, delivery or use of materials sold by respondent to the contractor. The testimony she offered dealt alone with the affirmative defense of estoppel or waiver. Her claim in that regard is based upon a conversation held at respondent's office on August 28, 1950. Both parties agreed that such a conversation was had on that date at that place between James White, respondent's manager, Ann Settle, and Dale Cooper, superintendent of construction for Ann Settle. Both parties agreed that Ladman's credit rating was discussed and that White stated that Ladman's credit was good and that Ladman's father had established his credit rating with James White. In other particulars their versions of the conference are in direct conflict.
According to the testimony favorable to Ann Settle, she paid Ladman $2,500 on the contract sometime before August 28, apparently at the commencement of construction. Shortly before the conference of August 28 Ladman had requested a further advance of $500 to put in the plumbing. Being disturbed about the handling of the account and wanting to know the status of the account between the lumber company and Ladman, Ann Settle and Dale Cooper went to respondent's office to inquire as to Ladman's credit. Cooper was in doubt as to how the final payments on the house could be made with the amount remaining due on the contract. Before paying Ladman any more money he and appellant desired to establish Ladman's credit and ascertain whether the lumber company was satisfied with its security. White was informed that Ladman needed some more money to complete the house and that Cooper was going to pay him. White told Dale Cooper and Ann Settle that they need not worry about Ladman's credit or about payments made by Ann Settle to Clifford Ladman; that Ladman's father would pay the lumber company if Ladman did not; that they need not worry about anything from there on. Cooper did not know the amount due by Ladman to the lumber company at that time. He wanted to ascertain the balance Ladman owed the company but White would not let Cooper examine the lumber company books. Cooper and Settle offered to make their check to be given in final payment payable jointly to the lumber company and Ladman for "whatever the amount come to" but White told them that "it wasn't necessary; that he had plenty of security without that and that he knew Ladman personally"; that he saw no purpose in making the check jointly payable; that Ladman's credit was good. White said he had Ladman's father as security. Cooper apparently did not go to White with the intention of paying the lumber company anything at that time but merely for the purpose of determining whether the company was satisfied with its security before paying the $500 requested by Ladman as an advance on the plumbing. Four days later, on September 1, Cooper paid $500 to Ladman and thereafter issued checks payable solely to Ladman and not jointly payable to Ladman and the lumber company as follows: September 30, $700; November 8, $1,600; November 20, $468. No further inquiry was made by Ann Settle or Cooper after October 28 with reference to the status of Ladman's account with the lumber company.
On rebuttal James White testified that he informed Ann Settle and Dale Cooper at the conference as to the balance of $1,917.30 then due the lumber company by Ladman. This amount was almost as much as the amount due Ladman on the contract. The building at that time was far from completed. Construction was started in July and Ladman did his last work on the house *76 in November. On August 28 no offer of payment was made by Cooper or Settle but at that time White suggested to them that on final payment the check be made payable jointly to the lumber company and the contractor. White specifically denied that he at any time told Cooper or Settle that it was not necessary to make the checks payable to the lumber company and Ladman. Respondent's bookkeeper Wilma Jean McFarland testified that at the conference White told Ann Settle and Cooper that he felt that Ladman's credit was good, but to be on the safe side they should make out the checks jointly payable to the lumber company and Ladman.
Cooper in rebuttal denied White's statement that Cooper had suggested that "from there on out" Ann Settle's check be made payable jointly to the lumber company and Ladman.
Appellant's principal point is that the court erred in failing to sustain appellant's defense of estoppel or waiver of lien, and in striking that part of appellant's answer in which the defense was asserted; that respondent waived its right to a materialman's lien, and that the owner having paid the contractor in full in reliance upon respondent's representations, the latter is estopped to hold appellant liable for the lien.
In order to effect an estoppel so as to defeat the materialman's lien in this case respondent must have made statements which misled appellant into a position wherein it would be inequitable to enforce the lien. 57 C.J.S., Mechanics' Liens, § 230, p. 804. And in order to sustain the defense of waiver of the lien the intention to waive must have been apparent and the conduct of respondent's manager must have been such that no other reasonable explanation is possible. Langdon v. Kleeman, 278 Mo. 236, 211 S.W. 877; Lee v. Hassett, 39 Mo.App. 67; Early v. Atchison, T. & S. F. R. Co., 167 Mo.App. 252, 149 S.W. 1170. In this particular case the foundation of both defenses would lie in a finding that respondent's manager made statements from which she was entitled to conclude that respondent was relying solely on the credit of the contractor and his father and was foregoing any further reliance upon appellant for the payment of the materials bill, and that respondent's manager rejected appellant's offer to pay the balance due by check jointly payable to the contractor and respondent. The testimony of appellant and her witness Dale Cooper in support of this theory of defense was sharply contradicted in its essential details by respondent's witnesses James White and Wilma McFarland. The making of the statement attributed to James White was specifically denied by him. He testified positively that he suggested that the check be made payable to both his company and the contractor. He was corroborated in this by Wilma Mc-Farland.
Our duty on this appeal is to review the case upon both the law and the evidence as in suits of an equitable nature, and the judgment is not to be set aside unless clearly erroneous. Section 510.310, subd. 4 RSMo 1949, V.A.M.S. We try the case anew and reach our own conclusions on the facts. In cases where the evidence is sharply conflicting, we ordinarily give due regard to the opportunity of the trial court to judge of the credibility of the witnesses, pursuant to § 510.310, subd. 4, supra. In the case at bar, however, there is uncertainty whether the trial judge passed upon the credibility of the witnesses in his consideration of the pleaded defenses of waiver and estoppel. At the conclusion of all the evidence and immediately before the court decided the case on the merits the court sustained the motion of respondent to dismiss Count II of appellant's answer. We do not know whether the trial court, in deciding the case in favor of respondent, rejected the defenses of estoppel and waiver on the ground that they were not defensive as a matter of law (as might be inferred from the action on the motion) or on the ground that the testimony offered in support thereof was not credible or sufficiently persuasive (as might be inferred from certain remarks concerning the weight of the evidence which were made by the court from the bench at the time the case was decided). On account of this *77 confusion in the record we cannot accord to the trial court the deference usually paid to its findings arising out of its superior opportunity to judge of the credibility of the witnesses. Nor under these circumstances can we deem that all fact issues upon which no specific findings are made have been found in accordance with the result reached as we are directed by § 510.310, subd. 2 RSMo 1949, V.A.M.S. to do. Instead, it is our duty in this particular case to analyze, weigh and evaluate the evidence without regard to the action of the trial court. Hoynes v. Hoynes, Mo.App., 218 S.W.2d 823, loc.cit. 828.
In reaching our own conclusion as to the facts it is significant that the question of a materialman's lien was not the subject of conversation at the conference of August 28. There was no express waiver of the lien. It was not mentioned by anyone. Respondent's evidence that James White suggested to appellant, in view of her apprehension about making further payments to the contractor, that future payments be made by check issued jointly to contractor and materialman is credible, satisfactory, and consistent with businesslike practices. On the other hand it would be inconsistent with such practice to reject an additional guarantee of payment, as appellant would have us believe respondent did. The owner had paid the contractor $2,500 on the contract, yet the contractor was requesting an advance of an additional $500 at a time when, to the knowledge of the owner, the contractor owed for materials almost as much as the balance to become due on the contract and at a time when the building was far from completed. Appellant was concerned and disturbed over the credit of her contractor. One way in which the owner could be certain that she would not have to pay twice would be the issuance of a joint check in making future payments to the contractor. The subject of a check jointly payable was discussed. Notwithstanding her anxiety about the matter, she elected to take the risk of double liability by subsequently making four payments directly to the contractor in a total sum of more than $3,200 over a period of more than three months, without any further inquiry as to the status of the contractor's account with the materialman. And, as indicative of the fact that she did not consider that the lien had been waived, she required the contractor to post a bond to perform the contract which required the contractor, in order to secure payments on account, to present lien waivers. We conclude from the whole evidence that respondent was relying for payment not only on the credit of the contractor and the assurances of the contractor's father, but also on the act of appellant in issuing a check jointly payable so that the contractor could not cash the check without the endorsement of respondent; that there was no intention to waive the lien, and that appellant was not entitled to conclude that respondent would not look to her for payment for materials furnished.
We agree with appellant's claim that the court erred in sustaining respondent's motion to strike Count II of appellant's answer, insofar as the ruling constituted the striking out of the evidence adduced in support thereof and implied that the evidence was inadmissible as not defensive. The error, however, was harmless. Appellant has not been prejudiced thereby. Appellant had a full opportunity to present her entire defense, all of which was preserved for appellate review. This court has read Count II and the testimony offered in support thereof as if it had not been stricken. See Woodard v. Stowell, Mo.Sup., 222 S.W. 815, loc.cit. 821. On all the evidence, including that which was stricken by the trial court and reinstated by us as a part of the record to be considered, appellant was not entitled to prevail, so that the ultimate result is the same whether the trial court struck the pleading and rendered judgment for respondent, or overruled the motion to strike and rendered judgment for respondent.
For her next point appellant asserts that respondent failed to prove that the materials were delivered and used in the construction of appellant's building. Respondent contends that these facts were expressly admitted in appellant's answer, thus dispensing with the necessity of such *78 proof. Appellant replies that while the draftsman of her answer alleged that the lumber, etc. "was used" he inadvertently omitted the words "to be" and that it was her intention to allege and the answer should have alleged that the lumber, etc. "was to be used" in the construction of the building.
Pleadings are construed most strongly against the pleader. Koewing v. Greene County Building & Loan Ass'n of Springfield, 327 Mo. 680, 38 S.W.2d 40; Therrien v. Mercantile-Commerce Bank & Trust Co., 360 Mo. 149, 227 S.W.2d 708. An allegation of fact in an answer is binding on the pleader and precludes the party from afterwards maintaining a contrary or inconsistent position. Riley v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 666. A party who in unambiguous language pleads facts constituting an admission of an essential element of his adversary's case cannot escape their legal effect on the ground that he inadvertently omitted certain words which, if inserted, would have given the pleading an altogether different meaning, in the absence of an attempt to amend, or revoke the admission for error of fact. The legal effect of the first clause of paragraph 3 of appellant's answer was to admit that respondent sold and delivered to Ladman lumber and building materials for use in the construction of appellant's dwelling house and that said materials thus sold and delivered were used for that purpose. Appellant, being bound by her pleading, cannot now take the position that respondent failed to prove that the materials were delivered on the job and used in the construction of the building. The only issue with respect thereto was the issue raised by the second clause of paragraph 3 of appellant's answer which, under § 509.080 RSMo 1949, V.A.M.S. constituted a denial of the dates of delivery, the quantity, and the value of the materials. Respondent proved these matters by the introduction of the 83 sales slips (Plaintiff's Exhibits 1-4). When they were sought to be introduced appellant made no objection thereto on the ground that the sales slips were inadmissible to prove dates of delivery, quantity or value of the materials. The only objections raised by appellant went to the questions of delivery, receipt for and use of the materials (which matters had been admitted in appellant's answer).
Appellant further insists that the questions of delivery and use of the materials in the building were treated as issues in the case by counsel for both respondent and appellant throughout the trial and that the case, having been tried on that theory in the trial court, must be so considered here; in other words, that respondent did not rely upon the admission contained in the answer. Appellant counts on the following circumstances in support of this insistence: that at the beginning of the trial counsel for respondent informed the court that certain admissions were made in the pleadings but did not claim that the answer admitted the delivery and use of the materials in the construction of the building; that respondent's principal witness attempted but failed to prove that the materials were delivered and so used; and that respondent did not object until after counsel for appellant had cross-examined respondent's principal witness at length on the subject. With respect to the statement made to the court by counsel for respondent at the beginning of the trial it appears that he referred only to the following formal matters: the corporate existence of respondent, the business in which respondent was engaged, appellant's ownership of the real estate described in the petition and the fact that Ann Settle and Clifford Ladman had entered into a contract for the construction of a dwelling house on said tract of land. Although it would have been appropriate for counsel at that time to have referred to the admissions contained in paragraph 3 of appellant's answer, his failure to do so did not constitute a waiver of the admission or prevent him from subsequently relying thereupon. It is evident from the record that the witness White was not placed upon the stand for the purpose of proving delivery and use of the materials in the building, but for the purpose of proving the contested issues of date of delivery, quantities and values. The record shows *79 that early in the cross-examination of James White, respondent's manager, with respect to delivery of the materials to the Ann Settle job, respondent's counsel objected to that line of interrogation for the reason that it questioned appellant's own pleading. This objection was overruled. After two or three more questions respondent's counsel made a further objection on the basis of paragraph 3 of the answer, quoting the same, and stating to the court: "Now, if this interrogation is for the purpose of questioning whether or not the materials went into the construction of the dwelling house, then I believe it is improper. That has been admitted by the pleading." It thus appears that as soon as the object of the cross-examination was reasonably apparent counsel for respondent registered his objection. The objection was timely and well taken and should have been sustained by the court, under the rule that where a party not having the burden of proof admits in his pleadings facts upon which the claim of the proponent rests, the judicial admission not only relieves the proponent from adducing evidence to prove such facts, but bars the opponent himself from disputing them. Hogsett v. Smith, Mo.App., 229 S.W.2d 20, loc.cit. 22, and cases cited. That the questions of delivery and use were not live issues at the trial is further borne out by the fact that neither appellant nor her chief witness, Dale Cooper, disputed the delivery or use of the materials. Neither of them testified to the non-delivery or non-use in the building of any single item of the lengthy list of materials contained in Exhibit A, nor did they even touch on these questions in their testimony.
Appellant next asserts error in admitting in evidence Plaintiff's Exhibits 1 to 5 over her objection. Exhibits 1 to 4 were the 83 sales tickets and Exhibit 5 was respondent's ledger sheet relating to the Ladman-Settle account. Appellant complains that the court assigned an unsound reason for its action, namely, that Ann Settle was bound by her pleading in which she alleged that she discussed payment of the total sum to the lumber company. The exhibits having been properly identified, relevant and competent to establish dates of delivery, quantity and values of materials delivered, were properly admitted in evidence, and the action of the court in admitting them was not erroneous, regardless of whether the reason assigned by the court was sound or unsound.
Finally, appellant asserts error in the admission in evidence of the performance bond, Plaintiff's Exhibit 9. There is no merit in this contention. The evidence was admissible. While the condition of the bond was not to hold appellant harmless from materialmen's lien claims, it was conditioned upon the performance by Clifford Ladman of "all and singular the covenants, agreement, stipulations and conditions" contained in the written contract between appellant and Ladman. The contract, Plaintiff's Exhibit 10, required Ladman to provide all the necessary labor and materials in the erection of the building and required Ladman, in order to secure payments on account, to present "proper lien waivers." The bond, having been executed on November 3, 1950, long after the date of the conversation of August 28 between appellant and respondent, five days before appellant paid $1,500 to Ladman and seventeen days before the final payment of $468 on November 20, 1950, was admissible for the purpose of showing that appellant was not relying upon waiver by respondent or estoppel to assert its lien claim, but was still anticipating that respondent would assert its lien claim and was insuring herself against lien claims.
No reversible error appearing, the Commissioner recommends that the judgment of the trial court be affirmed.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, affirmed.
BENNICK, P. J., and ANDERSON and IVAN LEE HOLT, Jr., JJ., concur.