**FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellant,**

v.

**Edith Joyce Murray LOTT et al., Appellees.**

**No. 17761.**

United States Court of Appeals Fifth Circuit.

Jan. 11, 1960.

John D. Rienstra, King, Sharfstein & Rienstra, Beaumont, Tex., for appellant.

John G. Tucker, Orgain, Bell & Tucker, Beaumont, Tex., for appellees.

Before HUTCHESON, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment in favor of the survivors of a person killed in connection with an unusual use of an insured automobile. Stating the factual situation as related in the brief of the appellant insurance company:

"Davies, the named insured in a policy of liability insurance issued by Appellant, and three companions were in search of game on a mountainous road in Colorado. Spying three deer slightly below and to their right, Davies brought the insured vehicle to a stop and emerged with his rifle on the left hand side of the vehicle. Leaning over and against the vehicle, and resting his rifle across the top, Davies fired at one of the deer. For some unexplained reason (probably because the muzzle of the rifle did not clear the curved top of the vehicle) the bullet tore through the top of the car, was deflected downward and inflicted the fatal injuries to Murray, who was seated on the right side front seat of the vehicle.

"Murray's survivors, who are the Appellees here, brought an action against Davies in the United States District Court for the Eastern District of Texas, Beaumont Division, to recover damages for Murray's death. The insured defendant, Davies, made demand on Appellant to defend, which Appellant declined, claiming the accident did not arise out of the ownership, maintenance or use of the insured vehicle. Davies, defended by counsel of his own selection, suffered judgment against him in the sum of $10,000, the maximum recovery under the applicable Colorado death act. Because of Davies' inability to pay, and being subsequently adjudicated a bankrupt, Murray's survivors instituted the present action against Appellant to collect the judgment rendered against Davies, contending that Murray's death was caused by accident and arose out of the ownership, maintenance or use of the insured vehicle. Issue being joined, the action was tried before a jury, and on its verdict for Appellees judgment was entered against Appellant."

The applicable provision of the policy was:

"* * * to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Appellant contends that the facts were undisputed, as they were, and that "the insuring agreement being unambiguous, it became a question of law whether the coverage existed." We agree that this is so, but we construe this unambiguous insuring agreement as insuring against this loss rather than as excluding it.

■ The insurer here is in the somewhat unusual position for an insurance company of asking the court not to apply the strict language of the contract but to give it a gloss "to carry out and effectuate to the fullest extent the intention of the parties." Of course, courts should always seek to determine from a written contract just as from the words used in an oral contract what is the true intent of the parties. However, where the terms of a written contract are plain and unambiguous they alone are looked to to ascertain their meaning. Here, as might be said in a patent case, the recitation of facts resulting in the death of Miller "reads on" the language of the insuring clause. It is unquestionably true that in the ordinary sense of the words Miller's death was "caused by accident * * * arising out of the * * * use of the automobile."

■ But, appellant says, the automobile was being "used" as a gun-rest and not as a vehicle. The obvious answer to this is that no such limitations were placed on the word "use" by the insurance company in the preparation of its policy.[1] Appellant urges that in some jurisdictions courts have held that a contract of liability insurance may not properly be construed to cover injuries that result from acts "wholly disassociated from, independent of and remote from the use of the [vehicle]." Schmidt v. Utilities Insurance Company, 353 Mo. 213, 182 S.W.2d 181, 184, 154 A.L.R. 1088. With this principle of law we fully agree. However, as indicated by the discussion in our case of Red Ball Motor Freight v. Employers Mutual Liability Insurance Co., 5 Cir., 189 F.2d 374, 378, and the Texas case of Panhandle Steel Products Co. v. Fidelity Union Casualty Co., Tex.Civ.App., 23 S.W.2d 799, the words "incident to and arising out of the use of a motor vehicle" are not restricted to occasions when the insured party was hurt either because of the running of the automobile or because of its standing after normal use.

■■ Even were we to conclude that the terms used by the insurance company to spell out its liability were susceptible of more than the simple meaning we have already indicated, this would, of course, be of no benefit to the appellant. This is so because all must agree that *one* perfectly permissible construction of the words would be such as would comprehend the acts resulting in this injury. Thus, there would come into play the rule which appellant recognizes as applicable in Texas: That if the language of an insurance policy admits of more than one construction, that most favorable to the insured must be adopted, McCaleb v. Continental Casualty Co., 132 Tex. 65, 116 S.W.2d 679; Red Ball Motor Freight v. Employers Mutual Liability Insurance Co., supra.

The verdict of the jury being the only one which, under the terms of this policy, was legally permissible, the judgment entered thereon is

Affirmed.

1. Furthermore it is to be noted that the use stated in the face of the policy was "pleasure and business."