Arthur David BROWN, Appellant,

v.

SHELTER MUTUAL INSURANCE COMPANY, Respondent.

No. WD 46196.

Missouri Court of Appeals,
Western District.

Aug. 25, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Sept. 29, 1992.

Application to Transfer Denied
Oct. 27, 1992.

J. Christopher Spangler, Wesner, Kempton and Russell, Sedalia, for appellant.

James C. Johns, Cason, Edgett & Johns, Clinton, for respondent.

Before TURNAGE, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Arthur Brown appeals from the trial court's grant of summary judgment to Shelter Mutual Insurance Company (Shelter) on his claim for uninsured motorist benefits. Mr. Brown presents two points in this appeal, claiming that the trial court

erred in entering summary judgment in favor of Shelter because: (1) the undisputed facts before the trial court show that the uninsured motorist used the uninsured motor vehicle to transport a handgun and to transport decedent, said uses, as a matter of law, constitute a use of an uninsured motor vehicle under the terms of the policy; and (2) an unresolved issue of material fact existed as to whether decedent's death arose out of the ownership, maintenance, or use of a motor vehicle. The judgment is affirmed.

Ronald Brown was the natural son of the appellant, Arthur Brown. Both father and son were insured by Shelter under Policy No. 24–1–2662272–3, which provided uninsured motorist coverage of $25,000.00 per person. That policy provided:

COVERAGE E—UNINSURED MOTORISTS (DAMAGES FOR BODILY INJURY)

**We** will pay damages for **bodily injury** which an **insured** or the **insured's** legal representative is legally entitled to recover from the owner or operator of an **uninsured motor vehicle.** The **bodily injury** must be caused by accident and arise out of the ownership, maintenance or **use** of the **uninsured motor vehicle.**

"Bodily injury" was defined elsewhere in the policy as "bodily injury, and sickness, disease, or death which results from it."

Ronald Brown was shot and killed on the evening of November 6, 1987, by James F. Chitwood, Jr. Earlier that evening, Mr. Chitwood, Ronald Brown and Bill Glen made plans to visit an establishment known as the Countryside Palace to see a band that was playing there. Before Mr. Chitwood picked up the others he tried to repair his .25 caliber handgun which had been malfunctioning. He took the clip out of the gun and placed it in his pocket. He then put the gun in the front seat of his pickup truck and went to pick up Ronald Brown and Bill Glen.

Bill Glen requested Mr. Chitwood to drive to a nearby warehouse. Mr. Chitwood complied and parked the truck. Mr. Glen exited from the pickup. Mr. Chitwood, in describing what happened in an affidavit, stated:

I was sitting on the left hand side of the seat and Ron Brown was sitting in the passenger seat. The truck was parked. Just in general conversation, Ron asked me if I still had my gun. I said yes, it's here someplace and we both began looking for it there in the passenger area of my truck. I had my coat and some other items laying in the seat. I found the gun. I picked it up and handled it and displayed it to Ronald Paul Brown and in doing so it was pointed at him. That's when it went off. We didn't have any argument or words or anything like that. I did not shoot him intentionally. I wasn't even joking about the gun or trying to scare him. I just found it and picked it up and as I handled it, it went off accidentally. [T]he shot hit him in the left side of the chest. [I]t was a .25 caliber automatic. The pickup was parked and we were just sitting in it at the time the gun went off. I understand that it has been suggested that what happened had something to do with the operation or maintenance or use of the pickup and this is not so. We were just sitting in the pickup and when I picked up the gun and showed it to Ron it just accidentally went off.

In Mr. Chitwood's statement to the police he indicated that he believed the gun to be empty. Mr. Chitwood did not have any policy of automobile insurance at the time of the shooting.

Arthur Brown filed suit against Shelter alleging, in his Third Amended Petition, that:

\*    \*    \*    \*    \*    \*

8. That on or about November 6, 1987, Ronald Paul Brown suffered personal injuries culminating in his death, said injuries and death resulting from the discharge of a handgun in said uninsured motor vehicle.

9. That the aforesaid discharge of the handgun within said uninsured motor vehicle arose out of James F. Chitwood, Jr.'s, ownership, maintenance or use of the unisured [sic] motor vehicle in that:

a. James F. Chitwood, Jr., used said uninsured motor vehicle to transport a dangerous instrumentality, to wit: a loaded handgun;

b. James F. Chitwood, Jr., used said uninsured motor vehicle to transport decedent Ronald Paul Brown;

c. James F. Chitwood, Jr., used said uninsured motor vehicle to transport decedent Ronald Paul Brown while at the same time transporting a dangerous instrumentality, to wit: a loaded handgun;

d. At the time of the discharge of the weapon, the motor vehicle was being used by the decedent and Chitwood, in that it was being occupied by both the decedent and Chitwood.

Shelter filed a motion for summary judgment which the trial court sustained on the basis that Ronald Brown's personal injury and death did not arise out of the ownership, maintenance or use of the motor vehicle in question. Arthur Brown appeals.

When reviewing a motion for summary judgment, the record must be scrutinized in the light most favorable to the party against whom the motion was filed and judgment rendered, according that party all reasonable inferences drawn therefrom. *West v. Jacobs*, 790 S.W.2d 475, 479 (Mo. App.1990). Summary judgments shall only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c). The burden is on the party who moves for summary judgment to show that no genuine issue of material fact exists. *West*, 790 S.W.2d at 479.

Arthur Brown argues that the trial court erred in entering summary judgment in favor of Shelter because, as a matter of law, the ruling that Ronald Brown's death did not arise "out of the ownership, maintenance or use of a motor vehicle" was erroneous. Mr. Brown cites *Schmidt v. Utilities Ins. Co.*, 353 Mo. 213, 182 S.W.2d 181, 183 (1944), to emphasize that the words "arising out of ... use" are to be broadly construed pursuant to the plain, usual and ordinary meaning of the terms unless limited by the policy. *Schmidt* and other cases cited by Mr. Brown can be factually distinguished. He further claims that this court's holding in *Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13 (Mo.App.1980), is erroneous. Mr. Brown's contention is without merit. *Cameron* controls in the instant case.

In *Cameron*, the insurer brought a declaratory judgment action to determine its liability in regard to injuries sustained by a passenger caused by the discharge of a .243 Magnum Winchester rifle after the passenger alighted from the vehicle. *Id.* at 14. This court thoroughly examined cases from other jurisdictions concerning the existence or nonexistence of coverage under automobile liability insurance policies in cases involving the discharge of a weapon which the court divided into five categories. *Id.* at 15–16. One category involved the accidental discharge of guns inside moving or motionless vehicles due to an occupant handling or toying with the gun. *Id.* at 15. In these cases, without exception, no coverage was found to exist. *Id.* Even though *Cameron* involved alighting from a vehicle, the court found that there was ... no liability on the part of the insurer because:

In short, human conduct wholly independent of the operation or use of the vehicle caused the rifle to discharge. According to their legal-factual theory, the pickup was merely the "situs" or "locus" of the accidental discharge of the rifle and, such being the case, there was no causal connection between the discharge of the rifle and the use of the automobile. Ergo, there was no coverage afforded by the insuring agreement of the automobile liability policy issued by Cameron Mutual under the overwhelming weight of relevant case authority from other jurisdictions which this court deems persuasive and judicially sound. (citations omitted).

*Id.* at 18.

The recent case of *Steelman v. Holford*, 765 S.W.2d 372 (Mo.App.1989), confirms the holding in *Cameron*. In *Steelman*, the plaintiff was struck by a bullet fired from the jeep of Dennis Holford. *Id.* at 373. Home Mutual Insurance Company, Holford's homeowner's insurer, contended, as in the instant case, that the trial court erred in concluding that Steelman's injuries did not arise out of the use of a motor

vehicle. Citing *Cameron*, the *Steelman* court held, "At best, the jeep was merely the 'situs' or 'locus' of Steelman's injury, as the discharge of the rifle was unconnected with the inherent use of the motor vehicle in question." *Steelman*, 765 S.W.2d at 378.

In the instant case, Mr. Brown claims that the vehicle was used to transport the gun and transport decedent. These facts do not distinguish the case from *Cameron* or *Steelman*. The most Mr. Brown has proved is that the vehicle was the 'situs' or 'locus' for the shooting. Point I is denied.

In Point II Mr. Brown contends that a genuine issue of material fact remained unresolved, for jury resolution, as to whether Ronald Brown's death arose "out of the ownership, maintenance or use of a motor vehicle." As a matter of law, as discussed *supra* in Point I, under *Cameron* and *Steelman*, the undisputed facts of this case show that Ronald Brown's death was not a result of the "ownership, maintenance or use of a motor vehicle." Point II is denied.

The judgment of the trial court, granting Shelter's motion for summary judgment, is affirmed.

All concur.